**SECOND DIVISION**
**BARNES, P. J.,**
**RICKMAN and SELF, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received*** **in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**February 7, 2017**

# In the Court of Appeals of Georgia

A16A1481. IN THE INTEREST OF J. M. A., A CHILD.

BARNES, Presiding Judge.

J. M. A. appeals from the juvenile court's judgment adjudicating him delinquent for violating the conditions of his probation. J. M. A. contends that the juvenile court erred in denying his motion to dismiss the State's delinquency petition for lack of jurisdiction, and he challenges the sufficiency of the evidence to support the court's adjudication of delinquency. For the reasons discussed below, we affirm.

In reviewing a delinquency adjudication, we construe the record in the light most favorable to the juvenile court's ruling. *In the Interest of J. W.*, 309 Ga. App. 470, 470-471 (711 SE2d 48) (2011). So construed, the record shows that on July 18, 2014, 13-year-old J. M. A. was adjudicated delinquent in the Juvenile Court of DeKalb County for criminal attempt to commit burglary and was placed on probation for one year. The specific conditions of J. M. A.'s probation included that he perform 40 hours of

community service during his probationary term and pay an initial probation supervision fee of $75 by September 18, 2014.

On July 16, 2015, the State filed a complaint in the juvenile court, alleging that J. M. A. had committed the delinquent act of violating his probation by failing to complete his community service hours or pay the full supervision fee. The complaint cited to OCGA § 15-11-2 (19) (B) (2014),[1] which defines a "delinquent act" to include "[t]he act of disobeying the terms of supervision contained in a court order which has been directed to a child who has been adjudicated to have committed a delinquent act." The State subsequently filed a delinquency petition against J. M. A. that contained the same allegations as the complaint and again cited to OCGA § 15-11-2 (19) (B) as the basis for the charge.

In October 2015, J. M. A. filed a motion to dismiss the delinquency petition. According to J. M. A., the July 18, 2014 probation order upon which the delinquency petition was predicated had expired one year after he had been placed on probation, and

---

[1] Georgia's Juvenile Code was significantly revised, effective January 1, 2014, and the new Code applies "to all offenses which occur and juvenile proceedings commenced on or after such date," which includes the present case. Ga. L. 2013, p. 294, §§ 1/HB 242, 5-1.

there was no statutory or common law basis for tolling his probationary sentence. J. M. A. argued that once the probation order expired, the juvenile court lost jurisdiction to continue to hear any claims brought by the State that he had violated the conditions of his probation. Hence, J. M. A. maintained, the State's delinquency petition ought to be dismissed for lack of jurisdiction.

The juvenile court denied J. M. A.'s motion to dismiss, concluding that J. M. A.'s jurisdictional argument was misplaced because the State had not filed a motion to revoke J. M. A.'s probation, as it could have done under OCGA § 15-11-608 (b). Rather, the juvenile court emphasized, the State had filed a new petition alleging the delinquent act of a violation of probation under OCGA § 15-11-2 (19) (B). Because the State had filed a petition alleging the commission of a new delinquent act rather than sought a revocation of probation, the juvenile court concluded that the question whether the original probationary sentence had expired or been tolled was immaterial. Consequently, the juvenile court ruled that it had jurisdiction to continue to hear the delinquency case, even though the initial term of J. M. A.'s probation had ended.

Following the denial of the motion to dismiss, the juvenile court conducted an adjudicatory hearing in January 2016 on the delinquency charge that J. M. A. had violated the specific conditions of his probation by failing to complete his community

3

service or pay the full supervision fee. Two witnesses testified at the hearing, J. M. A.'s probation officer and his mother. J. M. A. elected not to testify in his own defense.

J. M. A.'s probation officer testified that J. M. A. had only completed 36 of his 40 hours of community service and had an outstanding balance of $55 on his supervision fee when the State initiated the present delinquency proceedings in July 2015. The officer testified that J. M. A. had completed his community service hours by the time of the adjudicatory hearing in January 2016 but still owed the remainder of the supervision fee. The officer further testified that she had sought to work with J. M. A. and his family because of their financial and transportation problems so that J. M. A. could complete the conditions of his probation. In this regard, the officer testified that she allowed J. M. A. great flexibility in choosing where to perform his community service, assisted him in finding a place to perform his community service, and set up a payment plan for the supervision fee with individual payments as low as $7.

J. M. A.'s mother also testified at the hearing. She conceded that J. M. A. had not completed his community service hours until December 2015, several months outside of the one-year probationary term, and still owed $55 of the $75 supervision fee. However, J. M. A.'s mother testified that J. M. A. had been unable to work after April 2015 because he had severely injured his foot, requiring surgery and a period of

restricted activity. J. M. A.'s mother further testified that before the injury occurred in April 2015, she did not have a car to transport J. M. A. and no money to provide him with bus fare because she was unemployed, and that no businesses would hire him because of his age.

Nevertheless, J. M. A.'s mother conceded that there had been no physical reason J. M. A. could not do some type of work before his foot injury in April 2015, and that there were many restaurants and other local businesses in the immediate area of the apartment where they lived. She further testified that J. M. A. had not made any efforts of which she was aware to find any type of work, and she had personally only asked one restaurant about the possibility of hiring him. J. M. A.'s mother also admitted that J. M. A. received $725 a month in Supplemental Security Income ("SSI") benefits from Social Security.

At the conclusion of the hearing, J. M. A.'s counsel conceded that J. M. A. had not timely performed all of his community service hours and had not paid the full supervision fee, but he argued that the State had presented insufficient evidence that the probation violations had been willful. The juvenile court disagreed, stating at the hearing that J. M. A. could have looked for odd jobs like "washing cars" or "sweeping up hair at a barber shop" and there was no evidence that he ever made such efforts. The

juvenile court thereafter entered an order adjudicating J. M. A. delinquent for violating his probation, finding "that the allegations of the petition are true, that the acts ascribed to said child were, in fact, committed by said child, and that such acts constitute acts of delinquency . . . within the meaning of the law."

The juvenile court released J. M. A. to the custody of his mother. Following a dispositional hearing, the juvenile court placed J. M. A. on probation for 6 months and included as special conditions of his probation that he perform 20 additional hours of community service and pay a supervision fee of $55. This appeal by J. M. A. followed.

1. J. M. A. first contends that the juvenile court erred in denying his motion to dismiss the delinquency petition for lack of jurisdiction. According to J. M. A., the juvenile court no longer had jurisdiction to adjudicate his alleged violations of probation once his original one-year probationary term ended in July 2015 because there was no statutory or common law basis for tolling the probationary period. We are unpersuaded under the circumstances of this case, where the State filed a new delinquency petition under OCGA § 15-11-2 (19) (B) to address J. M. A.'s alleged probation violations rather than a motion to revoke his probation under OCGA § 15-11-608 (b).

As a general rule, once a sentence has been served, the sentencing court loses jurisdiction over the criminal defendant to modify or alter the sentence. *State v.*

6

*Mohamed*, 203 Ga. App. 21, 21 (2) (416 SE2d 358) (1992). See *Sentinel Offender Svcs., LLC v. Glover*, 296 Ga. 315, 329 (3) (b) (766 SE2d 456) (2014) ("[O]nce a sentence has been served, jurisdiction over the defendant ceases."). Therefore, a sentencing court's jurisdiction to revoke or modify an adult criminal defendant's probation ceases once the term of the defendant's probationary sentence has ended, unless the expiration of the sentence has been tolled based on statutory or common law principles. See *Anderson v. Sentinel Offender Svcs., LLC*, 298 Ga. 854, 857-858 (1) (784 SE2d 791) (2016); *Glover*, 296 Ga. at 329 (3) (b); *State v. Mills*, 268 Ga. 873, 874 (495 SE2d 1) (1998); *Mohamed*, 203 Ga. App. at 21 (2).

Here, however, the juvenile court did not revoke or modify J. M. A.'s probationary sentence, but instead adjudicated him delinquent for a new substantive offense, as sought by the State when it filed a new delinquency petition under OCGA § 15-11-2 (19) (B). Notably, revocation of probation is not the exclusive remedy available to the State under Georgia's new Juvenile Code when a juvenile defendant has violated the conditions of his probation. Rather, as this Court recently explained in *In the Interest of H. J. C.*, 331 Ga. App. 506, 509 (2) (771 SE2d 184) (2015),

> OCGA § 15-11-2 (19) (B) defines "delinquent acts" as including "[t]he act of disobeying the terms of supervision contained in a court order which

has been directed to a child who has been adjudicated to have committed a delinquent act[.]" . . . [Thus,] the statute provides a mechanism by which a child who violates probation ordered in a previous adjudication of delinquency may become the subject of a new delinquency petition. . . . As part of the same statutory scheme, . . . OCGA § 15-11-608 (b) provides that a delinquent child's violation of probation "*may* be reported to the prosecuting attorney who *may* file a motion in the court for revocation of probation[.]"

(Emphasis supplied.) Given this unambiguous statutory framework, we held in *H. J. C.*, 331 Ga. App. at 509-510 (2), that the State is clearly afforded two alternative procedural avenues for addressing a violation of probation in juvenile proceedings: file a new delinquency petition alleging the probation violation as a delinquent act pursuant to OCGA § 15-11-2 (19) (B), or file a motion to revoke the juvenile's probation under OCGA § 15-11-608 (b).[2]

In the present case, the State chose the first procedural avenue and filed a new delinquency petition against J. M. A., alleging that his violation of the conditions of his

_____

[2] Construing prior versions of the Juvenile Code, we have held that if a child is still on juvenile court probation after turning 17 and then violates his probation, the State's only remedy in that specific context is the filing of a petition to revoke probation. See *In the Interest of T. F.*, 314 Ga. App. 606, 607-608 (1) (724 SE2d 892) (2012); *In the Interest of B. S. L.*, 200 Ga. App. 170, 171 (407 SE2d 123) (1991). We need not determine if the same rule applies under the new Juvenile Code, given that J. M. A. committed the alleged probation violations before turning 17.

probation constituted a delinquent act under OCGA § 15-11-2 (19) (B), and the juvenile court adjudicated J. M. A. delinquent under that petition. It follows that Georgia case law addressing the jurisdiction of a sentencing court to revoke or modify a probationary sentence, relied upon by J. M. A. to support his motion to dismiss, is simply inapposite.[3] Instead, jurisdiction turns on the provisions of the new Juvenile Code that address a juvenile court's jurisdiction over petitions alleging delinquent acts, and in this regard, the Code plainly and unambiguously provides that a juvenile court has exclusive original jurisdiction to hear and decide cases, like the present one, where a child under the age of 17 years is alleged to have committed a delinquent act. See OCGA §§ 15-11-2 (10) (B); 15-11-10 (1) (A).[4] Nothing in these statutory provisions suggests that the delinquent act of a violation of probation should be treated differently from other delinquent acts for jurisdictional purposes, and we decline to impose different jurisdictional rules by way of judicial fiat. See generally *Frazier v. Southern R. Co.*, 200

---

[3] Because the State did not seek to revoke J. M. A.'s probation, we express no opinion regarding whether or to what extent principles of statutory or common law tolling apply in the context of a motion to revoke a juvenile's probation brought pursuant to OCGA § 15-11-608 (b).

[4] Under certain circumstances, not applicable here, superior courts have concurrent or exclusive jurisdiction over offenses committed by children. See OCGA § 15-11-560.

Ga. 590, 593 (2) (37 SE2d 774) (1946) (courts "may not substitute by judicial interpretation language of their own for the clear, unambiguous language of the statute, so as to change the meaning").

Accordingly, given the aforementioned statutory scheme, we conclude that the juvenile court had jurisdiction to hear and decide the State's petition alleging that J. M. A. had committed the new delinquent act of violating the conditions of his probation, irrespective of whether the one-year term of J. M. A.'s probation ended after the commencement of the new delinquency proceedings.[5] The juvenile court therefore committed no error in denying J. M. A.'s motion to dismiss for lack of jurisdiction.

2. J. M. A. next contends that there was insufficient evidence for the juvenile court to adjudicate him delinquent for violating his probation because there was no evidence that his failure to pay the full supervision fee and timely complete his community service were willful. Again, we are unpersuaded.

---

[5] J. M. A. did not argue in the juvenile court that the new delinquency proceedings were barred by the applicable statute of limitation, and thus we decline to address what limitation period should apply to delinquency petitions filed pursuant to OCGA § 15-11-2 (19) (B). See *In the Interest of S. M. G.*, 284 Ga. App. 64, 66 (643 SE2d 296) (2007) (appellate courts will not address issues that were neither raised below nor ruled upon by the juvenile court).

To support a finding of delinquency, a child's violation of the conditions of probation must be willful and voluntary. *Gray v. State*, 313 Ga. App. 470, 473 (2) (722 SE2d 98) (2011). See *Johnson v. State*, 162 Ga. App. 226, 226-227 (2) (291 SE2d 94) (1982); *Burson v. State*, 161 Ga. App. 107, 109 (2) (289 SE2d 254) (1982); *Wade v. State*, 152 Ga. App. 529, 530 (2) (263 SE2d 268) (1979). If the child is alleged to have violated his probation by failing to pay a fee or fine, there must be evidence that the child "willfully refused to pay or failed to make sufficient bona fide efforts legally to acquire the resources to pay." *Bearden v. Georgia*, 461 U.S. 660, 672 (II) (103 SCt 2064, 76 LE2d 221) (1983). See *Odom v. State*, 312 Ga. App. 403, 404-405 (718 SE2d 329) (2011). If the child is alleged to have violated his probation by failing to complete a required program or community service, there must be evidence that the failure was the result of the child's own voluntary and willful conduct rather than circumstances outside his control. See *Gray*, 313 Ga. App. at 473-474 (2); *Oliver v. State*, 305 Ga. App. 779, 779-780 (1) (700 SE2d 861) (2010).

In considering the sufficiency of the evidence supporting a juvenile court adjudication of delinquency, we apply the same standard of review that is used in any criminal case by construing the evidence in favor of the adjudication to determine if a rational trier of fact could have found beyond a reasonable doubt that the juvenile committed the acts charged.

11

*In the Interest of J. T.*, 239 Ga. App. 756, 757 (521 SE2d 862) (1999). We neither weigh the evidence nor resolve issues of witness credibility, *In the Interest of M. S.*, 292 Ga. App. 127, 127 (664 SE2d 240) (2008), and "[a]s long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the [S]tate's case, the conviction will be upheld." (Citation and punctuation omitted.) *In the Interest of J. L. B.*, 280 Ga. App. 556, 560 (5) (634 SE2d 514) (2006).

Here, there was at least some evidence, construed in favor of the juvenile court's ruling, to support a finding beyond a reasonable doubt that J. M. A. had willfully and voluntarily violated the conditions of his probation as alleged in the State's delinquency petition. More specifically, there was evidence presented at the hearing that J. M. A. had not paid the full probation supervision fee of $75, even though his probation officer set up a payment plan requiring low monthly payments and J. M. A. received $725 a month in SSI benefits. Furthermore, J. M. A.'s mother conceded at the hearing that J. M. A. had been physically able to work from his adjudication of delinquency in July 2014 until his foot injury in April 2015 and that there were lots of businesses in the immediate area where they lived, but she was unaware of J. M. A. making any personal effort to find any type of work. Under these circumstances, the juvenile court was authorized to find that J. M. A. willfully refused to pay the supervision fee or failed to

12

make sufficient bona fide efforts legally to acquire the resources to pay the fee, and therefore to conclude that his failure to pay was willful and voluntary. See *Odom*, 312 Ga. App. at 404-405 (juvenile court entitled to find that defendant failed to make sufficient bona fide efforts to find a job to pay restitution required by probation order).[6]

Additionally, there was at least some evidence that J. M. A. had willfully and voluntarily failed to timely perform all of his community service hours. The evidence showed that J. M. A.'s probation officer was flexible in allowing him to choose where to perform his community service and helped him make that choice, that J. M. A found

---

[6] Relying upon *Johnson v. State*, 307 Ga. App. 570, 572 (707 SE2d 373) (2011), J. M. A. argues that the juvenile court was required to make an express finding at the adjudicatory hearing or a written finding in its order that his failure to pay the supervision fee was willful and that he failed to make sufficient bona fide efforts to acquire the resources to pay. But *Johnson* was a probation revocation case where the trial court imprisoned the defendant for failure to pay certain probation fees, and thus it arguably does not apply to the present case, given that J. M. A.'s probation was not revoked and he was not imprisoned for failing to pay the fee. In any event, since our decision in *Johnson*, we have clarified that a trial court revoking probation is not required to use "precise language," and that we will affirm the trial court's revocation of probation for failure to pay a fee so long as it is clear from the record that the trial court considered the willfulness issue and rejected the probationer's reasons for being unable to pay. See *Odom*, 312 Ga. App. at 404-405. And, here, it is clear from the specific arguments raised by J. M. A. at the adjudicatory hearing, and the juvenile court's statements in response to those arguments, that the court considered the willfulness issue and rejected J. M. A.'s reasons for being unable to pay the supervision fee. See id.

a place where he could perform his service hours despite having transportation issues, and that J. M. A. had many months in which he could have completed his hours before his foot injury in April 2015. Nevertheless, the evidence showed that J. M. A. performed only a portion of his community service hours during his probationary term and waited until many months after the term had ended before completing his service. Given this record, the juvenile court was entitled to find that J. M. A.'s failure to timely complete his community service hours was willful and voluntary. See, e.g., *Oliver*, 305 Ga. App. at 779-780 (1) (defendant failed to complete treatment program as a result of his own poor decisions).

For these combined reasons, we conclude that there was sufficient evidence for the juvenile court to adjudicate J. M. A. delinquent for violating the conditions of his probation. The juvenile court's adjudicatory order therefore is affirmed.

*Judgment affirmed. Rickman and Self, JJ., concur.*