**FIFTH DIVISION**
**MCFADDEN, P. J.,**
**BRANCH and BETHEL, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**October 23, 2017**

# In the Court of Appeals of Georgia

A17A0784, A17A0785, A17A0786. IN THE INTEREST OF E. B.,
a child (three cases).

MCFADDEN, Presiding Judge.

In these related cases, E. B. appeals from the juvenile court's orders adjudicating him delinquent for actions he allegedly committed in 2014, when he was 13 years old. In Cases No. A17A0784 and A17A0785, we reverse E. B.'s adjudications of delinquency for burglary and shoplifting because the evidence was insufficient to support those adjudications; consequently, we do not address his other claims of error in those cases. In Case No. A17A0786, we affirm E. B.'s adjudication of delinquency for tampering with the operation of an electronic monitoring device because the evidence authorized the adjudication and any issues regarding the juvenile court's error in her disposition of that adjudication are moot.

1. *Facts and procedural history.*

"In reviewing a delinquency adjudication, we construe the record in the light most favorable to the juvenile court's ruling." *In the Interest of J. M. A.*, 340 Ga. App. 155 (796 SE2d 773) (2017) (citation omitted).

(a) *Shoplifting (Case No. A17A0785).*

So construed, the record shows that on April 30, 2014, E. B. and some other children, including his younger brother, El. B. , were "playing" in the sporting goods area of a Walmart store. E. B. picked up a packaged Airsoft BB gun and held onto it for several minutes. After he saw that another child in the group had concealed an unpackaged Airsoft gun in his clothing, E. B. said, "he has his and I want one, too." Shortly afterward, E. B. dropped an unpackaged Airsoft gun on the floor, breaking it.

When the Airsoft gun broke the children scattered. E. B., his brother El. B., and another child remained in the store for a few more minutes; they walked around and returned to look at the Airsoft guns before leaving. Outside the store, a loss prevention officer who had witnessed E. B. drop and break the Airsoft gun stopped the three boys and, when the boys refused to talk with him, called 911. Police dispatched to the scene brought the three boys back into the store where they were

interviewed. The third child "told the Wal[m]art people what had happened" and was released; he was not charged because he had "walked off" when the other child showed the concealed Airsoft gun and E. B. dropped the unpackaged Airsoft gun. E. B. and El. B. did not make any statements about what had happened and they were charged with shoplifting and taken into custody. At that time neither boy possessed any Walmart merchandise.

The state filed a delinquency petition against E. B., alleging that he was delinquent for taking the Airsoft gun with the intent to appropriate the property to his own use without paying Walmart for it.

(b) *Burglary (Case No. A17A0784).*

On June 3, 2014, E. B.'s next-door neighbors returned from several days out of town to find the door to their house broken, a window open, and several items taken, including a wallet, clothing, and food. Information from other people in the neighborhood led an investigating police officer to speak with E. B.'s mother, who allowed the officer to search their house. The officer found food belonging to the victims in the washing machine and the wallet under the mattress in a bedroom. (The evidence does not indicate to whom that bedroom belonged.) The officer showed the wallet to E. B. and his family. He asked them how the wallet got under the mattress,

3

where the rest of the victims' stolen items were, and whether they "had anything to do with it." In response, E. B.'s 12-year-old brother, Et. B., showed the officer a suitcase belonging to E. B.'s family and located under the mother's bed that contained more of the victims' belongings.

Two police officers then sat in the living room with E. B. and his family, and one of the officers and E. B.'s mother questioned E. B. and his brothers. That officer testified that Et. B. said that all three boys had been in the neighbors' house and that "they went in after they went to sleep, the parents went to bed. . . . [T]hey put the younger child through a window, [El. B.], I believe, and he opened the door and they went in and took the goods[.]"

The state filed a delinquency petition against E. B., alleging that he was delinquent for unlawfully entering the neighbors' house with the intent to commit a theft.

(c) *Tampering with the operation of an electronic monitoring device (Case No. A17A0786).*

E. B. was released into his father's custody and ordered to wear a leg monitor pending the hearing on the burglary petition. On the night of June 25, 2014, without notifying the Department of Juvenile Justice, E. B.'s mother left town with him and

4

his siblings. His father found E. B.'s leg monitor in the boy's bedroom. It had a missing piece. E. B.'s father informed the Department of Juvenile Justice that the boy had left the county and was no longer wearing the leg monitor. E. B. was apprehended in another county with his mother.

The state filed a delinquency petition against E. B., alleging that he was delinquent for forcibly interfering with his leg monitor by breaking the device from his leg.

2. *Shoplifting (Case No. A17A0785).*

E. B. challenges the sufficiency of the evidence authorizing his adjudication of delinquency for shoplifting. We agree that the evidence was insufficient.

Pertinent to this appeal, the offense of shoplifting is committed when a person, "with the intent of appropriating merchandise to his or her own use without paying for the same . . . [c]onceals or takes possession of the goods or merchandise of any store or retail establishment[.]" OCGA § 16-8-14 (a) (1). This case presents a fact pattern that we have not found in any other Georgia cases — E. B. was in a "self-service store in which customers pay for their purchases at check-out counters located at the front," *Gibson's Products v. Edwards*, 146 Ga. App. 678 (247 SE2d 183) (1978), he held the merchandise only within an area proximate to its display, and he

did not take any overt action that could evince an intent to appropriate the item, such as concealing the item, attempting to conceal it, carrying it around the store, representing that he had already paid for it, or attempting to leave the store with it. Compare *K-Mart Corp. v. Coker*, 261 Ga. 745, 747 (3) (410 SE2d 425) (1991) (person walked through store with unpackaged lipstick for approximately 20 minutes before discarding it in place where it was unlikely to be found); *Tyner v. State*, 313 Ga. App. 557, 559 (1) (722 SE2d 177) (2012) (defedant took items from display and concealed them under clothing rack); *Gilliam v. State*, 237 Ga. App. 476, 477 (1) (517 SE2d 348) (1999) (defendant carried jacket around store, represented by his behavior that he owned it, and then attempted to obtain refund for it); *Parham v. State*, 218 Ga. App. 42, 43 (1) (460 SE2d 78) (1995) (defendant concealed two shirts in his pants); *In the Interest of H. D. H.*, 208 Ga. App. 526, 526-527 (1) (431 SE2d 155) (1993) (juvenile, while paying for another item, picked up pack of cigarettes and began to put it in his pocket without offering to pay); *Mathis v. State*, 194 Ga. App. 498, 498-499 (1) (391 SE2d 130) (1990) (defendant placed several items on counter and told cashier he had already paid for them).

Courts in other jurisdictions have explored the issue of what constitutes shoplifting within a self-service store such as the store in this case. Those courts have

6

noted that, "[i]n self-service stores, customers have permission to pick up, handle, move, try, replace, and carry about merchandise within the store." *Holguin v. Sally Beauty Supply*, 264 P3d 732, 736 (N. M. Ct. App. 2011) (citing *Durphy v. United States*, 235 A2d 326 (D. C. Ct. App. 1967); *Lee v. State*, 474 A2d 537 (Md. Ct. Spec. App. 1984); *Carter v. Commonwealth*, 694 SE2d 590 (Va. 2010). Consequently, other courts "have held that the burden of proof in establishing the intent to steal by a defendant is more onerous upon the prosecution where the offense alleged occurred inside a self-service store." *Haslem v. Florida*, 391 S2d 389, 391 (Fla. App. 1980) (citing *Jones v. State*, 314 S2d 876 (Ala. Ct. Crim. App. 1975); *Groomes v. United States*, 155 A2d 73 (D. C. Ct. App. 1959)). Those courts have held that the conduct from which intent could be inferred must be clearly adverse to the store's possession of the goods, such as concealing or attempting to remove the goods from the store. See *Haslem*, supra. See also *Carter*, supra at 106 ("If the defendant does not leave the premises, the evidence must establish that the defendant in some way, within the store, exercised trespassory possession of the goods inconsistent with the owner's rights.") (citations omitted).

This persuasive authority is consistent with the rule in Georgia that the act of removing merchandise from its immediate place of display is not shoplifting. *Martin*

*v. State*, 168 Ga. App. 623, 623-624 (1) (309 SE2d 899) (1983). Moreover, "we have a duty to construe a statute in a manner which upholds it as constitutional, if that is possible," *Freeman v. State*, __ Ga. __, __ (1) (__ SE2d __) (Case No. S17A1040, decided Oct. 2, 2017) (citation and punctuation omitted), and it is not apparent that construing the shoplifting statute to criminalize the act of holding and then dropping an item in the aisle in which it is displayed would pass constitutional muster. To be constitutional, a statute must be "so designed that persons of ordinary intelligence who would be law abiding can tell what conduct must be to conform to its requirements[.]" *Watts v. State*, 224 Ga. 596, 598 (1) (163 SE2d 695) (1968) (citations and punctuation omitted). In *Watts*, our Supreme Court held that a provision of an earlier version of the shoplifting statute, which provided that a person could commit shoplifting by removing merchandise from its immediate place of display with the intent to appropriate it to his or her own use, was sufficiently clear as to the prohibited conduct. Id. at 597-598 (1). The provision of the current statute, prohibiting "possession" of merchandise with the requisite intent, is not so clear, particularly in the context of a self-service store, for the reasons described in the persuasive authority cited above.

8

The evidence in this case does not show that E. B. acted in any way clearly adverse to the store's possession of the Airsoft gun. Instead, the evidence merely shows that E. B. commented that he wanted an Airsoft gun, held an unpackaged Airsoft gun, and then dropped it, apparently accidentally, within the aisle in which it was displayed. Under the persuasive authority cited above this evidence would not be sufficient to show that E. B. possessed the Airsoft gun with the intent to appropriate it without paying for it. We agree with this analysis and find that the evidence did not authorize a finding that E. B. committed the offense of shoplifting when he held, and then dropped, the Airsoft gun.

(b) *Remaining enumerations of error.*

Because we reverse the adjudication of delinquency for shoplifting, we do not address E. B.'s remaining enumerations of error concerning that adjudication.

3. *Burglary (Case No. A17A0784).*

(a) *Sufficiency of evidence.*

E. B. argues that there was not sufficient evidence to adjudicate him delinquent for burglary. We agree.

> In considering the sufficiency of the evidence supporting a juvenile court adjudication of delinquency, we apply the same standard

9

of review that is used in any criminal case by construing the evidence in favor of the adjudication to determine if a rational trier of fact could have found beyond a reasonable doubt that the juvenile committed the acts charged.

*In the Interest of J. M. A.*, supra, 340 Ga. App. at 161 (2) (citation omitted). E. B. argues that the evidence was insufficient as to the burglary charge because the only evidence connecting *him* with the burglary (rather than other household members) was a police officer's testimony about his brother[1] Et. B.'s statement to that officer that all three brothers went into the neighbors' house. Et. B. did not testify at the hearing.

A "statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted[,]" is hearsay. OCGA § 24-8-801 (c). But admissions by parties, including statements "of which the party has manifested an adoption or belief in its truth," are not barred by the hearsay rule. OCGA § 24-8-801 (d) (2) (B). The state argues that evidence of Et. B.'s

---

[1] In their briefs, both E. B. and the state describe Et. B. as a "codefendant." However, nothing in the record reflects that Et. B. was a co-adjudicant. The record indicates only that E. B. and his other brother, El. B., were co-adjudicants in this delinquency proceeding.

statement was not hearsay but admissible as an adoptive admission of E. B. because E. B. did not protest when his brother made the statement. We disagree.

Prior to the enactment of our new Evidence Code (including OCGA § 24-8-801 (d) (2) (B)'s provision on adoptive admissions), our Supreme Court had held that "a witness in a criminal trial [could] not testify as to a declarant's statements based on the acquiescence or silence of the accused." *Jarrett v. State*, 265 Ga. 28, 29 (1) (453 SE2d 461) (1995) (emphasis omitted). If the rule articulated in *Jarrett* still applies, then it prohibits the police officer's testimony as to Et. B.'s statements based on the acquiescence or silence of E. B.

But OCGA § 24-8-801 (d) (2) (B) reflects a change from our former Evidence Code. See *Bundrage v. State*, 265 Ga. 813, 819 (3) (462 SE2d 719) (1995) (former Evidence Code did not contain adoptive admissions exception to the hearsay rule). The rule under our former Evidence Code, articulated in *Jarrett*, went

> further than most applications of the Federal Rule, which admit a defendant's silence, not made in the presence of the police, when "under the circumstances, an innocent defendant would normally be induced to respond, and (when) . . . there are sufficient foundational facts from which the jury could infer that the defendant heard, understood, and acquiesced in the statement."

11

Paul S. Milich, *Georgia's New Evidence Code — An Overview*, 28 Ga. St. U.L. Rev. 379, 411 (2012) (quoting *United States v. Carter*, 760 F2d 1568, 1579 (11th Cir. 1985)). The parties have not cited to, and we are not aware of, any Georgia cases addressing the application of our new Evidence Code, OCGA § 24-8-801 (d) (2) (B), to acquiescence or silence by a criminal defendant or juvenile adjudicant in response to a statement made by another in the presence of law enforcement. In an article published before our new Evidence Code went into effect, Professor Milich observed that "[w]hether Georgia courts will construe new Code Section 24-8-801 (d) (2) (B) the same way as the old Georgia statute or the way federal courts construe it remains to be seen." Milich, *Georgia's New Evidence Code — An Overview*, supra (footnote omitted).

But we need not decide in this case whether the rule in *Jarrett* still applies because, even if we construe OCGA § 24-8-801 (d) (2) (B) the way the Eleventh Circuit has construed it, and even if we assume that OCGA § 24-8-801 (d) (2) (B) applies to silence in the presence of a law enforcement officer, but see Milich, *Georgia's New Evidence Code — An Overview*, supra at 411, Et. B.'s statement implicating E. B. was not an adoptive admission. See *Olds v. State*, 299 Ga. 65, 69 (2) (786 SE2d 633) (2016) (we look to decisions of the federal appellate courts,

12

especially the United States Supreme Court and the Eleventh Circuit, when considering the meaning of provisions of our new Evidence Code that were borrowed from the Federal Rules of Evidence). The Eleventh Circuit has held that "[w]hen a statement is offered as an adoptive admission two criteria must be met. First, the statement must be such that an innocent defendant would normally be induced to respond. Second, there must be sufficient foundational facts from which the [factfinder] could infer that the defendant heard, understood, and acquiesced in the statement." *United States v. Joshi*, 896 F2d 1303, 1311 (11th Cir. 1990) (citations omitted). Pretermitting whether the first criterion could be met where, as here, an un-*Mirandized* criminal defendant or juvenile adjudicant is silent in response to a statement made by another person in the presence of law enforcement, the second criterion has not been met. The hearing evidence, viewed most favorably to the juvenile court's ruling, permitted the inference that E. B. was present when his brother spoke to the officer. But the evidence provides no specifics about what Et. B. said to the officer about E. B.'s involvement or how E. B. had reacted to his brother's statements; instead, during the hearing the testifying officer merely agreed with the *prosecutor's* statements that E. B. was "involved in it, too" and that "all three boys were present inside the residence." It cannot be inferred from such a sparse record

13

that E. B. understood his brother to implicate him, much less that E. B. acquiesced in what his brother said. To the extent the juvenile court viewed Et. B.'s statement to the officer to be a nonhearsay adoptive admission by E. B., she was not authorized to do so. The officer's testimony about Et. B.'s statement must be viewed as hearsay.

Because E. B. did not object to the hearsay testimony, we review the admission of this evidence for plain error. See OCGA § 24-1-103 (d) ("[n]othing in this Code section shall preclude a court from taking notice of plain errors affecting substantial rights although such errors were not brought to the attention of the court"); *Mosley v. State*, 298 Ga. 849, 851-852 (2) (a) (785 SE2d 297) (2016) (applying plain error analysis to alleged admission of hearsay that was not objected to at trial). The plain error analysis involves a four-pronged standard:

> First, there must be an error or defect — some sort of deviation from a legal rule — that has not been intentionally relinquished or abandoned, i.e., affirmatively waived, by the appellant. Second, the legal error must be clear or obvious, rather than subject to reasonable dispute. Third, the error must have affected the appellant's substantial rights, which in the ordinary case means he must demonstrate that it affected the outcome of the trial court proceedings. Fourth and finally, if the above three prongs are satisfied, the appellate court has the discretion to remedy the error — discretion which ought to be exercised only if the error seriously

affects the fairness, integrity or public reputation of judicial proceedings.

*Gates v. State*, 298 Ga. 324, 327 (2) (781 SE2d 772) (2016) (citation and punctuation omitted).

The four prongs of the plain error analysis are met in this case. Whether under the *Jarrett* rule or under the Eleventh Circuit rule, the testimony at issue clearly and obviously was inadmissible hearsay. The testimony affected the outcome of the proceeding; it was the only evidence that E. B. was involved in the burglary, and E. B. presented alibi evidence that he was not at home with his brothers on the night of the burglary. To adjudicate a child delinquent based solely on hearsay testimony and in the face of evidence that the child had not committed the delinquent act seriously affects the fairness and integrity of judicial proceedings. We therefore exercise our discretion to remedy this error by disregarding the officer's hearsay testimony regarding E. B.'s involvement in the burglary. Without that testimony, the evidence is insufficient to support E. B.'s adjudication for that act, and the adjudication that is the subject of Case No. A17A0784 must be reversed.

(b) *Remaining enumerations of error.*

15

Because we reverse the adjudication of delinquency for burglary, we do not address E. B.'s remaining enumerations of error concerning that adjudication.

4. *Tampering with the operation of an electronic monitoring device (Case No. A17A0786).*

(a) *Sufficiency of evidence.*

E. B. concedes that there was circumstantial evidence "creat[ing] a strong suspicion of guilt" that he committed the offense of tampering with the operation of an electronic monitoring device. That offense is committed when a person "knowingly and without authority remove[s], destroy[s], or circumvent[s] the operation of an electronic monitoring device which is being used for the purpose of monitoring a person who is . . . [w]earing [the] device as a condition of bond or pretrial release[,]" OCGA § 16-7-29 (b) (2), or "knowingly and without authorization request[s] or solicit[s] any other person to remove, destroy, or circumvent the operation of [the] device[.]" OCGA § 17-6-29 (c). He nevertheless argues that the evidence was insufficient to adjudicate him delinquent for this offense because the circumstantial evidence did not exclude every other reasonable hypothesis. "Generally, however, questions as to the reasonableness of hypotheses are for the factfinder[,]" *Smith v. State*, 290 Ga. 428, 429 (1) (721 SE2d 892) (2012), and "this

16

[c]ourt will only disturb a finding of delinquency in a case based on circumstantial evidence if the factfinder abuses [her] discretion, leaving the finding of delinquency unsupportable as a matter of law." *In the Interest of M. A. R.*, 306 Ga. App. 818, 819-820 (702 SE2d 919) (2010) (citation omitted). The evidence that E. B.'s broken ankle monitor was found at his former residence after he moved with his mother to another county supported the juvenile court's finding of delinquency.

(b) *Challenge to disposition.*

On August 14, 2014, the juvenile court ordered that E. B. be detained for thirty days and placed on probation for one year. E. B. argues that the juvenile court erred by entering these orders of disposition without first communicating with and requesting input from the court in the county to which he moved, as required by OCGA § 15-11-490 (b).

This issue is moot because the disposition orders have expired and E. B. is no longer subject to their conditions. See *Jayko v. State*, 335 Ga. App. 684, 686 (782 SE2d 788) (2016); *Davidson v. State*, 284 Ga. App. 333, 336 (2) (643 SE2d 848) (2007). Compare *In the Interest of B. L.*, 333 Ga. App. 860, 861 (1) n. 7) (777 SE2d 705) (2015) (appeals from denial of juveniles' motions to dismiss delinquency petitions were not moot even though juveniles had been released from custody

because, if successful, appeals would vacate delinquency adjudications). We find no ground to reverse E. B.'s *adjudication* as a remedy for the juvenile court's alleged error regarding his disposition. See *Davidson*, supra at 336 (2).

*Judgment affirmed in Case No. A17A0786. Judgments reversed in Case No. A17A0784 and Case No. A17A0785. Bethel, J., concurs. Branch, J., concurs in Divisions 1, 2 and 4, and in the judgment only in Division 3.*