**THIRD DIVISION**
**DOYLE, P. J.,**
**REESE, J., and SENIOR APPELLATE JUDGE PHIPPS**

**NOTICE: Motions for reconsideration must be _physically received_ in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**April 8, 2022**

# In the Court of Appeals of Georgia

A22A0311. IN THE INTEREST OF J. W., a child.

PHIPPS, Senior Appellate Judge.

J. W. appeals from a juvenile court order (a) adjudicating him delinquent for violating the conditions of his probation and (b) committing him to the custody of the Department of Juvenile Justice ("DJJ"). He contends that the juvenile court was not authorized to commit him to DJJ custody as a disposition for the delinquent act of violation of probation. For the reasons discussed below, we agree, vacate the juvenile court's dispositional order, and remand the case for entry of a new dispositional order consistent with this opinion.

Although J. W.'s prior adjudications are not included in the appellate record, the facts in this case are not in dispute. On January 23, 2020, the juvenile court adjudicated J. W. delinquent for acts which, if committed by an adult, would have

constituted terroristic threats and two controlled substance offenses. Two of the terroristic threats adjudications were felony charges. Although the juvenile court was authorized to place J. W. in restrictive custody because he committed an act of delinquency designated as a felony, see OCGA § 15-11-601 (a) (10) (A), the juvenile court instead placed him on probation.

J. W. purportedly violated his probation a number of times by intentionally leaving the custody of the Fulton County Department of Family & Children Services ("DFCS"). On January 25, 2021, the juvenile court placed J. W. under a new order of probation for 24 months.[1] The order required J. W. to obey the lawful commands of his legal custodian and cooperate with his probation officer. J. W. left DFCS custody the following day, he thereafter failed to recharge his ankle monitor, and his whereabouts were unknown until mid-February.

On January 27, 2021, J. W.'s probation officer filed a complaint in the juvenile court alleging that J. W. had committed the delinquent act of "Violation of Probation." The complaint cited OCGA § 15-11-2 (19) (B), which defines a

---

[1] The facts, documents, and/or hearings leading to or surrounding this new probation order are not included in the record on appeal. However, the parties do not raise any argument regarding the January 25, 2021 order on appeal, and we therefore express no opinion on the propriety of that order.

"[d]elinquent act" to include "[t]he act of disobeying the terms of supervision contained in a court order which has been directed to a child who has been adjudicated to have committed a delinquent act." The complaint did not include any indication that the delinquent act was classified as a misdemeanor or felony. The State subsequently filed a delinquency petition against J. W. containing the same allegations as the complaint. Specifically, the petition and its attachment charged J. W. with "the offense of VIOLATION OF PROBATION, O.C.G.A. 15-11-2 (19) (B)," for (a) leaving the presence of his DFCS behavioral aide on January 26, 2021 and remaining absent until he was located on February 14, 2021, (b) failing to recharge his ankle monitor during that time, and (3) failing to update his probation officer regarding his whereabouts.

At the hearing on the petition, J. W. admitted that he left his behavioral aide without permission on January 26, 2021, and remained absent until he was found on February 14, 2021. He further admitted that he failed to recharge his ankle monitor and update his probation officer regarding his whereabouts. Both J. W.'s probation officer and the State recommended commitment to DJJ custody. J. W.'s attorney, however, repeatedly argued at the hearing that the juvenile court lacked the authority to commit J. W. to DJJ custody for a violation of probation. The juvenile court

3

disagreed, stating that a violation of probation authorized the court to "send [J. W.] to DJJ for the remainder" of his original sentence. On February 26, 2021, the juvenile court adjudicated J. W. delinquent for "the offense of DELINQUENCY VIOLATION OF PROBATION" and committed him to DJJ custody "for the remainder of his probation expiring January 24, 2023."

J. W. filed a motion for reconsideration, asserting once again that his commitment to DJJ custody was not a lawful disposition for a delinquency adjudication of violation of probation. The State thereafter filed a motion to revoke J. W.'s probation under OCGA § 15-11-608.[2] At the hearing on the motions, the juvenile court judge stated, "if he's on probation for a felony and he violates it, then I believe I have the discretion to re-sentence him and continue – and commit him to DJJ." The juvenile court subsequently denied J. W.'s motion for reconsideration and dismissed the State's motion for revocation of probation. J. W. appeals the juvenile court's February 26, 2021 order finding him delinquent for a violation of probation and committing him to DJJ custody until January 24, 2023.

In his sole enumeration of error, J. W. argues that the juvenile court unlawfully committed him to DJJ custody after finding him delinquent solely for violating his

---

[2] The motion for revocation of probation is not included in the appellate record.

4

probation. Specifically, J. W. asserts that because the State chose to charge him with a new delinquent offense pursuant to OCGA § 15-11-2 (19) (B) rather than seek a probation revocation under OCGA § 15-11-608, the State was required to demonstrate that he committed an offense under OCGA § 15-11-601 (a) (10) to commit him to DJJ custody, see OCGA § 15-11-601 (a) (11), and a violation of probation does not satisfy that requirement. This challenge to the juvenile court's order involves a question of law, which we review de novo, and we review any factual findings supporting the juvenile court's order for clear error. *In the Interest of R. M.*, 329 Ga. App. 725, 726 (766 SE2d 126) (2014). We agree with J. W. that the trial court's disposition committing him to DJJ custody for a violation of probation is improper given the circumstances of this case.

If a juvenile is adjudicated delinquent, placed on probation, and subsequently violates his probation, the State is afforded two alternative procedural avenues for addressing the violation of probation: (1) it may file a motion to revoke probation under OCGA § 15-11-608; or (2) it may file a new delinquency petition alleging the probation violation as a delinquent act pursuant to OCGA § 15-11-2 (19) (B).[3] *In the*

---

[3] Georgia's Juvenile Code was revised, effective January 1, 2014, and the new Code applies to all juvenile proceedings commenced on or after that date, which includes the present case. See Ga. L. 2013, pp. 294, 514, § 5-1. However, the new

*Interest of J. M. A.*, 340 Ga. App. 155, 158-159 (1) (796 SE2d 773) (2017); *In the Interest of H. J. C.*, 331 Ga. App. 506, 509-510 (2) (771 SE2d 184) (2015). The method chosen by the State determines the punishment that may be imposed by the juvenile court.

1. *Motion to revoke probation.* "An order granting probation to a child adjudicated for a delinquent act may be revoked on the ground that the conditions of probation have been violated." OCGA § 15-11-608 (a). According to the statute, "[a]ny violation of a condition of probation may be reported to the prosecuting attorney who may file a motion in the court for revocation of probation. A motion for revocation of probation shall contain specific factual allegations constituting each violation of a condition of probation." OCGA § 15-11-608 (b). "If the court finds, beyond a reasonable doubt, that a child violated the terms and conditions of probation, the court may: (1) [e]xtend probation; (2) [i]mpose additional conditions

Juvenile Code adopted many provisions of the former Code, and cases construing prior versions of the Code are relevant to the extent that the provisions have been adopted in the new Code.

6

of probation; or (3) [m]ake any disposition that could have been made at the time probation was imposed." OCGA § 15-11-608 (f).[4]

A probation revocation in a juvenile court case is not a new proceeding. Although revocation results in a new dispositional order, that order "relates to the original delinquent act. . . . [T]he new order of disposition is a sanction for the original offense for which the juvenile was adjudicated delinquent." *In the Interest of N. M.*, 316 Ga. App. 649, 654 (2) (730 SE2d 127) (2012) (decided under former OCGA § 15-11-40 (b)). Following a probation revocation, the juvenile court may impose the sentence that could have originally been imposed upon the juvenile in lieu of probation, such as confinement. Id. at 651 (1), 652 (2). And "[d]isobeying the

_____

[4] The applicable probation revocation statute in this case is OCGA § 15-11-608. However, in light of the similarity of the statutory provisions in pre-2000 Code Section 15-11-42 and pre-2014 Code Section 15-11-40, which were succeeded by provisions in OCGA § 15-11-608, cases decided under those former Code sections are relevant and instructive. See former Code Ann. § 24A-2801 (b) (Ga. L. 1971, pp. 709, 739), redesignated as pre-2000 OCGA § 15-11-42 (b), and subsequently redesignated as OCGA § 15-11-40 (b) (2000) (Ga. L. 2000, pp. 20, 54, § 1) ("An order granting probation to a child found to be delinquent or unruly may be revoked on the ground that the conditions of probation have not been observed."); see also former Code Ann. § 24A-2801 (c) (Ga. L. 1971, pp. 709, 740), redesignated as pre-2000 OCGA § 15-11-42 (c), and subsequently redesignated as OCGA § 15-11-40 (c) (2000) (Ga. L. 2000, pp. 20, 54, § 1) ("Any party to the proceeding, the probation officer, or any other person having supervision or legal custody of or an interest in the child may petition the court for [probation revocation, and t]he petition shall set forth in clear and concise language the grounds upon which the relief is requested.").

terms of probation is a delinquent act," see id. at 651 (1); see also OCGA § 15-11-2 (19) (B) (defining a "[d]elinquent act" as "[t]he act of disobeying the terms of supervision contained in a court order which has been directed to a child who has been adjudicated to have committed a delinquent act"), for which a juvenile's probation may be revoked. OCGA § 15-11-608 (a) ("An order granting probation to a child adjudicated for a delinquent act may be revoked on the ground that the conditions of probation have been violated.").

However, in order to seek a probation revocation, the State must petition for revocation under the appropriate statute authorizing the juvenile court to revoke a child's probation; "[a] delinquency petition alleging a probation violation is not sufficient to revoke a juvenile's probation imposed for his previous adjudication of delinquency." *In the Interest of R. M.*, 329 Ga. App. at 727 (1); accord *In the Interest of N. M.*, 316 Ga. App. at 653 (2). "[D]ue process requires that before a juvenile court may revoke an order granting probation, a petition must be filed requesting such relief." *In the Interest of C. H.*, 319 Ga. App. 373, 375 (735 SE2d 291) (2012) ("juvenile court [cannot] impose a period of confinement concerning the delinquent act of 'violation of probation'" where the State filed a delinquency petition under former OCGA § 15-11-65 (a) rather than a petition seeking probation revocation

under former OCGA § 15-11-40) (citation and punctuation omitted); accord *In the Interest of B. C.*, 169 Ga. App. 200, 201-202 (311 SE2d 857) (1983) (a petition to revoke a juvenile's probation – rather than a petition of delinquency – must be filed before a juvenile court is authorized to revoke probation and order disposition based on the juvenile's prior adjudication of delinquency) (decided under former OCGA § 15-11-42).

It is clear based on the appellate record that the juvenile court treated this case as a probation revocation. The court stated during the initial hearing that a violation of probation authorized the court to "send [J. W.] to DJJ for the remainder" of his original sentence. The court then entered a disposition adjudicating J. W. delinquent for violating his probation but committing him to DJJ custody "for the remainder of his probation expiring January 24, 2023." Subsequently, during the post-disposition motions hearing, the juvenile court stated, "if he's on probation for a felony and he violates it, then I believe I have the discretion to re-sentence him and continue – and commit him to DJJ."

The record, on its face, however, demonstrates that the State filed a new delinquency petition under OCGA § 15-11-2 (19) (B) to address J. W.'s probation violations rather than a motion for revocation of probation under OCGA § 15-11-608

(b). Although the State's attorney, in a single instance, refers to the adjudication hearing as a "revocation," the word "revoke" does not appear a single time in the appellate record (before the hearing on J. W.'s motion for reconsideration), neither the complaint nor the petition reference OCGA § 15-11-608, and the word "revocation" does not appear until March 9, 2021, when the juvenile court denied the motion for revocation of probation filed by the State in response to J. W.'s motion for reconsideration. Because the State did not file a motion to revoke J. W.'s probation, the juvenile court erred when it treated the dispositional hearing as a probation revocation proceeding, concluded it was authorized to revoke J. W.'s probation, and "commit[ted] him to DJJ for the rest of [his original] sentence." See *In the Interest of C. H.*, 319 Ga. App. at 375 ("[T]he [S]tate did not file a petition for probation revocation, and the juvenile court was not allowed to impose a period of confinement concerning the delinquent act of 'violation of probation' by treating the dispositional hearing as a probation revocation proceeding."); *In the Interest of T. F.*, 314 Ga. App. 606, 608 (1) (724 SE2d 892) (2012) (finding the State did not file a petition for revocation where the complaint indicated it was for a "violation of probation," did not mention probation might be revoked, and did not reference the probation revocation statute) (decided under former OCGA § 15-11-40 (b)); accord *In the Interest of B. C.*,

10

169 Ga. App. at 201-202 (court erred in revoking juvenile's probation absent a petition for revocation).

2. *New delinquency petition*. In an attempt to circumvent the juvenile court's mistaken belief that it could revoke J. W.'s probation absent a petition for revocation, the State argues in its appellate brief, without citing a single case to support its position, that the juvenile court's disposition committing J. W. to DJJ custody nonetheless was proper. We therefore turn to the second method by which the State may address a violation of probation in juvenile proceedings: filing a new delinquency petition alleging the probation violation as a delinquent act pursuant to OCGA § 15-11-2 (19) (B). It is clear from the appellate record that this was the method by which the State chose to proceed in this case.

The State does not dispute that if it files a new delinquency petition alleging the probation violation as a delinquent act pursuant to OCGA § 15-11-2 (19) (B), the juvenile court must, as with any dispositional order, comply with the disposition requirements delineated in OCGA § 15-11-601. Under that statute, a juvenile may be committed to DJJ custody pursuant to OCGA § 15-11-601 (a) (11) "only if such child was adjudicated for a delinquent act involving" either

(A) [a]n offense that would be a felony if committed by an adult; or

11

(B) [a]n offense that would be a misdemeanor if committed by an adult and such child has had at least one prior adjudication for an offense that would be a felony if committed by an adult and at least three other prior adjudications for a delinquent act as defined in subparagraph (A) of paragraph (19) of Code Section 15-11-2.

OCGA § 15-11-601 (a) (10), (11). OCGA § 15-11-2 (19) (A), in turn, defines the applicable "[d]elinquent act" as "[a]n act committed by a child designated a crime by the laws of this state, or by the laws of another state if the act occurred in that state, under federal laws, or by local ordinance, and the act is not an offense applicable only to a child or a juvenile traffic offense."

At the outset, we note that the State does not assert in its appellate brief that the delinquent act of "violation of probation" itself constitutes an act which, if committed by an adult, would be punishable either as a felony or a misdemeanor. In fact, OCGA § 15-11-601 (a) (10) does not reference OCGA § 15-11-2 (19) (B), defining a "[d]elinquent act" as "[t]he act of disobeying the terms of supervision contained in a court order which has been directed to a child who has been adjudicated to have committed a delinquent act," or OCGA § 15-11-2 (19) (C), defining a "[d]elinquent act" as including "[f]ailing to appear as required by a citation issued for an act that would be a crime if committed by an adult." We, therefore, express no opinion on that

12

issue. Instead, we turn to the State's assertion that the juvenile court's disposition committing J. W. to DJJ custody was appropriate under OCGA § 15-11-601 (a) (10) (A) because J. W. pled guilty to an act that, if committed by an adult, would constitute the felony offense of escape under OCGA § 16-10-52 (a) (1) & (b) (1).[5]

Under OCGA § 16-10-52 (a) (1), a person commits the offense of escape when he "[h]aving been convicted of a felony or misdemeanor or of the violation of a municipal ordinance, intentionally escapes from lawful custody or from any place of lawful confinement[.]" And OCGA § 16-10-52 (b) (1) provides that a person who is convicted of the offense of escape after being convicted of a felony "shall be punished by imprisonment for not less than one nor more than ten years," constituting a felony offense. See OCGA § 16-1-3 (5) (a felony offense is one that is punishable by imprisonment for "more than 12 months"); OCGA § 17-10-3 (a) (1) (the maximum term of incarceration for a misdemeanor is a "term not to exceed 12 months"). According to the State, because J. W. admitted leaving the lawful custody of DFCS the day after his new probation order – requiring him to remain in DFCS custody –

---

[5] The State acknowledges in its appellate brief that although OCGA § 16-10-52 (a) (3) specifically contemplates the offense of escape committed by a juvenile, OCGA § 15-11-601 (a) (10) mandates that the relevant inquiry is to evaluate the offense as if J. W. were an adult, rendering subsection (a) (1) of OCGA § 16-10-52 the relevant portion of the statute.

13

took effect in January 2021, he committed an act which, if committed by an adult, would constitute a new felony offense. The State contends that because J. W. admitted that he committed an act "involving" the felony offense of escape, and because OCGA § 15-11-601 (a) (10) and (11) provide that a juvenile may be committed to DJJ custody if adjudicated for a delinquent act "involving" an offense that would be a felony if committed by an adult, "the fact that [J. W.'s] proceedings were styled as violations of probation is of no moment." We disagree.

Pretermitting whether the facts admitted by J. W. would constitute the offense of felony escape, it is well settled that due process is required in juvenile delinquency proceedings. See *In the Interest of A. T.*, 246 Ga. App. 30, 31 (539 SE2d 540) (2000); *D. P. v. State*, 129 Ga. App. 680, 682-683 (2) (200 SE2d 499) (1973). "To satisfy due process, a delinquency petition must contain sufficient factual details to inform the juvenile of the nature of the offense and must provide data adequate to enable the accused to prepare his defense." *In the Interest of A. T.*, 246 Ga. App. at 31. In that regard, a petition alleging delinquency, in addition to other required items, "shall set

forth plainly and with particularity . . . [i]f a child is being charged with a class A

designated felony act or class B designated felony act."[6] OCGA § 15-11-522 (5).

> Notice, to comply with due process requirements, must be given sufficiently in advance of scheduled court proceedings so that reasonable opportunity to prepare will be afforded, and it must "*Set forth the alleged misconduct with particularity*" . . . [.] Due process of law requires notice of the sort we have described – that is, notice which would be deemed constitutionally adequate in a civil or criminal proceeding. It does not allow a hearing to be held in which a youth's freedom and his parents' right to his custody are at stake without giving them timely notice, in advance of the hearing, of the *specific issues* that they must meet.

*D. P.*, 129 Ga. App. at 682 (2) (quoting *In re Gault*, 387 U. S. 1, 33-34 (III) (87 SCt

1428, 18 LE2d 527) (1967). Compare *In the Interest of A. T.*, 246 Ga. App. at 31-32

(petition alleging that juvenile "had committed the felony offense of possession of a

controlled substance with intent to distribute in violation of OCGA § 16-13-30," and

further alleging the specific facts regarding when and where the juvenile had been

---

[6] "Class A designated felony act[s]" and "Class B designated felony act[s]" are defined in OCGA § 15-11-2 (12) and (13). OCGA § 15-11-2 (12) (F) includes the following as a Class A designated felony act: "Escape in violation of Code Section 16-10-52, if such child has previously been adjudicated to have committed a class A designated felony act or class B designated felony act."

15

found and the number of bags of marijuana in his possession, satisfied due process because it informed the juvenile "of the nature of the offense with which he was charged," even though it did not specifically inform him that he could be sentenced to restrictive custody), with *D. P.*, 129 Ga. App. at 682-683 (2) (due process violated where juvenile had no notice that the charge upon which his delinquency might be based would be changed from burglary to receiving stolen goods).

Here, J. W. was never put on notice that he was being charged with the felony offense of escape or that by admitting that he violated the terms of his probation he was admitting to committing acts constituting a new felony offense. In fact, neither the word "escape" nor the escape statute appear in the appellate record. And neither the State's complaint, nor its petition for delinquency and attachment "set forth plainly and with particularity" that J. W. was being charged "with a class A designated felony act or class B designated felony act" as required by statute. OCGA § 15-11-522 (5). The State's argument that the juvenile court was authorized to commit J. W. to DJJ custody based on J. W.'s commission of an act that would constitute felony escape ignores the clear mandates of due process. See *In the Interest of A. T.*, 246 Ga. App. at 31-32; *D. P.*, 129 Ga. App. at 682-683 (2). Accordingly, this argument fails.

16

The State further argues in its appellate brief, again without citing a single case to support its position, that the juvenile court properly committed J. W. to DJJ custody under OCGA § 15-11-601 (a) (3) (B), which authorizes the court to place a juvenile on probation under the supervision of "[a]ny public agency authorized by law to receive and provide care for such child." According to the State, the DJJ qualifies as such an agency. This argument likewise lacks merit. First, the juvenile court's disposition in this case did not place J. W. on probation under the supervision of a public agency; it committed him to DJJ custody. Second, OCGA § 15-11-601 (a) (11) specifically addresses when a juvenile court may commit a juvenile to DJJ custody, and this plain and unambiguous language prevails over the State's stretched interpretation of the DJJ as a public agency authorized to supervise a juvenile placed on probation under OCGA § 15-11-601 (a) (3) (B). See generally *In the Interest of H. J. C.*, 331 Ga. App. at 510 (2) ("[J]udicial construction is appropriate only when a statute is ambiguous, and when the statutory language is plain and unequivocal, judicial construction is not only unnecessary but forbidden.") (citation and punctuation omitted).

Finally, the State contends in its appellate brief, yet again without citing a single case to support its position, that the juvenile court properly committed J. W.

17

to DJJ custody because, under OCGA § 15-11-32 (b), the juvenile court was within its authority to change, modify, or vacate its prior order – placing J. W. on probation – "on the ground that changed circumstances so require in the best interests of a child." Even if a juvenile court is permitted to sua sponte change, modify, or vacate its prior order, such was not done in this case; the trial court's dispositional order specifically adjudicates J. W. delinquent for the offense of violation of probation.

Because the juvenile court was not authorized to commit J. W. to DJJ custody given the facts of this case, "the juvenile court's sentence exceeds that allowed by law and is void." *In the Interest of C. H.*, 319 Ga. App. at 375. Consequently, the dispositional order in the instant case must be vacated and a new dispositional order issued in a manner consistent with this opinion.

*Judgment vacated and case remanded. Doyle, P. J., and Reese, J., concur.*

18