305 Ga. 729
FINAL COPY

S18G0994. THE STATE v. ORR.

Nahmias, Presiding Justice.

We granted a writ of certiorari in this case to determine whether Georgia's new Evidence Code abrogates the categorical rule this Court announced in Division 5 of *Mallory v. State*, 261 Ga. 625 (409 SE2d 839) (1991), which excludes evidence of a criminal defendant's pre-arrest "silence or failure to come forward" to law enforcement on the ground that such evidence is always "far more prejudicial than probative." Id. at 630.[1] As we explain below, the new Evidence Code, which took effect on January 1, 2013, precludes courts from promulgating or perpetuating judge-made exclusionary rules of evidence like the one we created in *Mallory*, and instead generally requires trial courts to determine the admissibility of evidence based on the facts of the specific case and the rules set forth

---

[1] Division 2 of *Mallory*, dealing with the necessity exception to the hearsay rule under the old Evidence Code, was previously overruled. See *Clark v. State*, 271 Ga. 6, 10-11 (515 SE2d 155) (1999).

in the Evidence Code, including OCGA § 24-4-403. Accordingly, we vacate the judgment of the Court of Appeals and remand the case with direction.

1. The evidence presented at appellee Otto Orr's trial in 2015 showed the following. Orr met Candice Nicole in June 2013, and in February 2014, the couple married and Candice became pregnant. According to Candice, after they had been together for a few months, Orr started to drink heavily and would hit her when they argued. Candice did not call the police or leave Orr because she thought things would change after the baby was born. In October 2014, the couple had a baby boy.

Candice testified that on January 26, 2015, before Orr left for work, he asked her to pick up some baby formula. When he returned home that evening and learned that she did not get the formula, they began to argue. Orr told Candice to leave the living room, but she refused. Orr then became violent, striking Candice in the face several times with a closed fist in front of their son. Candice then went into the bedroom, but Orr followed her and started to hit her

again. She tried to fight back, but he pushed her to the floor and kicked her in the stomach. Orr continued to kick Candice until she asked if he was going to kill her. Orr then stopped, called his friends to pick him up and take him to his mother's house, and left. Candice and the baby went to stay with her friend, who urged her to call 911.

The responding police officer testified that when he arrived at the friend's house, Candice's face was swollen and looked like she had been punched "a considerable amount of times." Candice returned home to retrieve her phone and clothes before going back to her friend's house, where she and the baby spent the night. Her friend did not testify.

Orr was arrested on the morning of January 28, 2015, and he was later formally accused of family violence battery and cruelty to children in the third degree. At his trial in September, Orr testified as follows. Candice was addicted to drugs and would attack him when she got angry; he would hit her only to defend himself from her attacks, and he had similarly acted in self-defense on the night of January 26. He was on the phone with his sister when Candice

struck him over the eye with a glass ashtray, splitting his skin and causing significant bleeding, because Candice mistakenly believed that he was talking to a woman with whom he was having an affair. He then responded by hitting Candice one time with a closed fist.

To rebut this defense, the prosecutor repeatedly asked witnesses about Orr's failure to call the police to report the abuse and injuries allegedly inflicted on him by Candice. First, the prosecutor asked the police officer who responded to Candice's 911 call whether he had ever responded to a domestic dispute call where Orr was the complainant. The officer said that January 26 was his "first time dealing with Mrs. Orr." The prosecutor then asked, "So to your knowledge, the defendant . . . did not call 911?" The officer answered, "To my knowledge, yes."

To support his defense, Orr called his sister and his cousin. His sister testified that she was talking to him on the phone on the evening in question when she suddenly heard screaming and yelling; when Orr returned to the conversation, he said that Candice had hit him in the head with an ashtray, and when his sister saw

him later that night at his mother's house, he had a gash on his head. She testified that she could hear Orr yelling "this is my sister" in the background of the phone call. In response to the prosecutor's cross-examination questions, Orr's sister acknowledged that Orr did not report the incident to the police, and that although she had wanted to contact the police herself, she did not. Orr's cousin testified that she saw Orr at his mother's house the day after the incident with a "goose egg" on his forehead that was still bloody. On cross-examination, the prosecutor again asked if Orr had ever reported his injury to the police, and the cousin answered no, explaining that Orr "did not want the police called on his wife."

Finally, Orr testified as the last defense witness. After pointing out a scar on his forehead that he said came from the ashtray attack, Orr said that when he returned to his house from his mother's, Candice "told me about the police — that she called the police or whatever, but I didn't know they was even looking for me or anything." Orr added that when the arresting officer arrived the following morning: "He said: Are you Otto Orr? I said: Yes. He said:

Well, you're going to jail for simple battery. . . . And I gave [Candice] my credit card, . . . and the next morning I got bond . . . ."

On cross-examination, the prosecutor asked Orr whether he called the police after the January 26 incident. Orr replied that he never called the police because he was afraid that if he did, the police or the Division of Family and Children Services would always be involved in his family's life. The prosecutor also asked Orr whether he ever told his ashtray story to "anyone in law enforcement." Orr answered: "I — yeah, that morning when they took me to jail. When they took me to jail, I told them, I said: What am I supposed to do about this — about this bruise up against my head?" There was no testimony from the arresting officer and no evidence that the police interviewed Orr after his arrest. Orr's counsel did not object to any of these questions by the prosecutor.

During the State's closing argument, the prosecutor capitalized on the testimony she had elicited about Orr's silence:

> That night the defendant — he wants to now claim self-defense. I find that particularly convenient. He never told the story to the police, never once said: ["]Hey, wait,

wait, wait, wait. I'm the victim here. She came at me with an ashtray.["] I submit to you that this is something made up because he has an interest in the outcome of this case.

Orr's counsel objected and moved for mistrial on the ground that the prosecutor improperly commented on Orr's failure to tell the police his story, but the trial court denied the motion without explanation. The jury rejected Orr's claim of self-defense and found him guilty of both charges. The trial court sentenced him as a recidivist to serve five years in prison on the battery count and a concurrent 12 months for child cruelty.

Orr's trial counsel filed a motion for new trial in November 2015. With new counsel, Orr amended the motion in March 2017, asserting that the trial court erred under *Mallory* by not granting the mistrial motion based on the State's improper comments on his pre-arrest silence and failure to come forward to the police. In an order entered on May 11, 2017, the trial court granted Orr's amended motion. The court noted that this Court had not yet determined whether the exclusionary rule announced in *Mallory* was still valid under the new Evidence Code, but in a decision issued

after Orr's trial, the Court of Appeals had held that it would continue to apply *Mallory* until this Court held otherwise. See *Tran v. State*, 340 Ga. App. 546, 553 n.7 (798 SE2d 71) (2017). The trial court therefore applied *Mallory*, held that the prosecutor's closing argument was a violation of *Mallory*'s rule, and concluded that the violation was not inadvertent (as shown by the prosecutor's questioning of witnesses about Orr's failure to come forward) and was not harmless. Accordingly, the court granted Orr a new trial.

The State appealed, but the Court of Appeals affirmed. See *Orr v. State*, 345 Ga. App. 74, 79 (812 SE2d 137) (2018). The majority held that because this Court had not yet overruled *Mallory*, it was bound to apply *Mallory*'s rule to this case. See id. at 78-79. The majority noted that the State had not challenged the trial court's conclusions that, if *Mallory* applies to this case, the prosecutor violated its rule and Orr suffered prejudice as a result. See id. at 79 n.4. Then-Judge Bethel concurred specially, arguing that *Mallory*'s rule was not based on former OCGA § 24-3-36, but rather was "court made law" based "neither on constitutional nor statutory

interpretation." *Orr*, 345 Ga. App. at 79. Judge Bethel agreed, however, that the *Mallory* rule remained binding "until further direction from the Supreme Court." Id. at 80.

We granted the State's petition for certiorari to provide that direction.

2.     To understand where *Mallory*'s categorical exclusionary rule is headed — oblivion — it is important to understand where the rule came from. *Mallory* was a murder case in which this Court reversed Vincent Mallory's convictions based on the improper admission of hearsay evidence, and then went on to address several issues that could arise again on retrial. See 261 Ga. at 628. One of those issues was Mallory's contention that his "right to remain silent" was violated when the trial court allowed the State to admit into evidence a portion of the statement he made to police more than a month after the murder occurred; the police had asked Mallory why he had not come forward to explain his innocence when he knew he was under investigation, and he answered that he was waiting for the police to come to him. Id. at 629. Mallory had testified at trial.

See id. at 626-627.

We first explained that the admissibility of this sort of evidence is not governed by the United States Supreme Court's decisions interpreting the federal Constitution. In the 1960s and 1970s, that Court constitutionalized rules prohibiting prosecutorial comment on a defendant's silence in various *post*-arrest contexts.[2] In the decade before *Mallory*, however, the Supreme Court clarified that at least when the government did not induce the defendant to remain silent

---

[2] In 1965, the United States Supreme Court held that the Fifth Amendment to the federal Constitution prohibits the government from commenting on a defendant's refusal to testify at trial and prohibits trial courts from instructing the jury that such silence could be considered substantive evidence of guilt. See *Griffin v. California*, 380 U.S. 609, 615 (85 SCt 1229, 14 LE2d 106) (1965). The following year, the Court said that the government is also prohibited from introducing evidence or implying guilt from evidence that a defendant exercised his right to remain silent during a custodial interrogation. See *Miranda v. Arizona*, 384 U.S. 436, 468 n.37 (86 SCt 1602, 16 LE2d 694) (1966). And in 1976, the Court held that due process under the Fourteenth Amendment prohibits the government from using, for impeachment purposes, evidence that the defendant exercised his right to remain silent after he was arrested and advised of his right to remain silent pursuant to *Miranda*. See *Doyle v. Ohio*, 426 U.S. 610, 619 (96 SCt 2240, 49 LE2d 91) (1976). We note that this Court recently reaffirmed that the right against compelled self-incrimination protected by the Georgia Constitution, see Ga. Const. of 1983, Art. I, Sec. I, Par. XVI, precludes the admission of evidence that a defendant exercised his right not to speak or act to produce incriminating evidence. See *Elliott v. State*, 305 Ga. 179, 223 (824 SE2d 265) (2019).

by advising him of his right to remain silent as required by *Miranda v. Arizona*, 384 U.S. 436, 467-468 (86 SCt 1602, 16 LE2d 694) (1966), and when the defendant then waives his privilege against compelled self-incrimination by testifying at trial, "the State may comment at trial upon the fact that he did not come forward voluntarily" without violating the federal Constitution. *Mallory*, 261 Ga. at 629 (citing *Jenkins v. Anderson*, 447 U.S. 231 (100 SCt 2124, 65 LE2d 86) (1980), and *Fletcher v. Weir*, 455 U.S. 603 (102 SCt 1309, 71 LE2d 490) (1982)).

Our Court then recognized that by not erecting a federal constitutional barrier to admissibility of this sort of evidence, the United States Supreme Court had left states "'free to formulate evidentiary rules defining the situation in which silence is viewed as more probative than prejudicial.'" *Mallory*, 261 Ga. at 630 (quoting *Jenkins*, 447 U.S. at 240). See also *Fletcher*, 455 U.S. at 607 ("A State is entitled, in such [pre-*Miranda*-warnings] situations, to leave to the judge and jury under its own rules of evidence the resolution of the extent to which postarrest silence may be deemed

to impeach a criminal defendant's own testimony."). We noted one provision of our State's then-existing Evidence Code under which evidence of a defendant's pre-arrest silence could be admitted, explaining that "OCGA § 24-3-36 provides that 'Acquiescence or silence, when the circumstances require an answer, a denial, or other conduct, may amount to an admission.'" *Mallory*, 261 Ga. at 630.[3]

The Court then announced *Mallory*'s categorical exclusionary rule in the following passage, which we quote in full:

> We take this opportunity to hold that in criminal cases, a comment upon a defendant's silence or failure to come forward is far more prejudicial than probative. Accordingly, from the date of publication of this opinion, December 26, 1991, in the advance sheets of [the] Georgia Reports, such a comment will not be allowed even where the defendant has not received *Miranda* warnings and where he takes the stand in his own defense. To the extent that the holding in *Fraley v. State*, 256 Ga. 178 (345 SE2d 590) (1986), conflicts with this holding, it is overruled.

---

[3] See, e.g., *Emmett v. State*, 243 Ga. 550, 553 (255 SE2d 23) (1979) (holding that evidence that the defendant did not respond to a witness's accusation that he killed the victim was admissible under the predecessor to former OCGA § 24-3-36); *Bloodworth v. State*, 216 Ga. 572, 573 (118 SE2d 374) (1961) (holding that evidence that the rape defendant refused to answer his wife's question "as to whether he had 'bothered' the [victim]" was admissible under the predecessor to former OCGA § 24-3-36).

*Mallory*, 261 Ga. at 630. The *Mallory* rule has since been applied dozens of times by Georgia's appellate courts and has been characterized as a "bright-line" evidentiary rule applicable even when a defendant is unaware that he is under criminal investigation — although the rule, like other evidentiary rules, can be waived and is subject to harmless-error review. See, e.g., *Sanders v. State*, 290 Ga. 637, 640-641 (723 SE2d 436) (2012); *Ruiz v. State*, 286 Ga. 146, 150-151 (686 SE2d 253) (2009); *Reynolds v. State*, 285 Ga. 70, 70-72 (673 SE2d 854) (2009).

*Mallory* said plainly that its rule was not imposed as a constitutional requirement.[4] And while *Mallory* was decided under

---

[4] Orr has not argued that the State's comments on his failure to tell his story to the police were prohibited by the federal or state Constitution, and we therefore do not address any constitutional question regarding such comments. We note that the United States Supreme Court has not decided whether evidence of a defendant's silence before custodial interrogation or before being advised of or invoking the right to remain silent is admissible under the federal Constitution as *substantive* evidence, rather than only to impeach a defendant who testifies at trial (as Orr did). See *Salinas v. Texas*, 570 U.S. 178, 183 (133 SCt 2174, 186 LE2d 376) (2013) (plurality opinion) (granting certiorari to address this question but declining to answer it because the petitioner did not expressly invoke the privilege during a non-custodial interview). The federal circuit courts and state high courts are divided on this issue, and some state

the old Evidence Code — meaning when that Code was in effect — it was not an interpretation of any provision of that statutory scheme. The only old evidence statute the Court cited was former OCGA § 24-3-36, which was a statute regarding the *admissibility* of certain hearsay evidence, not the *exclusion* of any evidence as prejudicial.[5] Indeed, the old Evidence Code had no provision

high courts have excluded such evidence under their state Constitutions. See generally *State v. Kulzer*, 979 A2d 1031, 1035-1037 & n.3 (Vt. 2009) (collecting cases and noting that *Mallory* was decided on state evidentiary rather than constitutional grounds). See also *United States v. Wilchcombe*, 838 F3d 1179, 1190-1191 (11th Cir. 2016) (discussing the split in the federal circuit courts, with some circuits prohibiting the use of even pre-arrest silence as evidence of guilt, some circuits prohibiting the substantive use of post-arrest, pre-*Miranda*-warnings silence, and some circuits — including the Eleventh — allowing comment on a defendant's silence at any time prior to receiving *Miranda* warnings).

Judge Jordan concurred in *Wilchcombe* to argue that "[i]f there is going to be a trigger for the constitutional protection of silence, that trigger should be custody and not the recitation of *Miranda* warnings. The right to remain silent comes from the Fifth Amendment, not *Miranda*, and exists independently of *Miranda* warnings." 838 F3d at 1196 (Jordan, J., concurring). This Court recently held that a suspect may invoke his right to remain silent after arrest, and thus prevent substantive comment on his resulting silence, even if officers have not yet advised him of that right. See *Davidson v. State*, 304 Ga. 460, 468-470 (819 SE2d 452) (2018). See also *State v. Spratlin*, 305 Ga. 585 (826 SE2d 36) (2019). But for the most part, we have not needed to address the constitutional questions that arise regarding pre-arrest, pre-*Miranda*-warnings silence, having instead simply excluded such evidence under *Mallory*'s non-constitutional rule for the past 28 years.

[5] In a few of our recent cases reserving the question of whether *Mallory*'s rule remains valid under the new Evidence Code, we have said that *Mallory*

addressing the exclusion of evidence as more prejudicial than probative. Nor did *Mallory* purport to be reaffirming a common-law rule of evidence. The Court cited no ancient, common-law decision; indeed, the only case *Mallory* cited was our 1986 *Fraley* decision that reached a contrary holding, which *Mallory* promptly overruled (with no mention of stare decisis). Moreover, if *Mallory* were merely reiterating a common-law evidence doctrine, it would make no sense to then say that the rule applied only prospectively, after the date the opinion was published.

It thus appears that *Mallory*'s categorical exclusionary rule is best characterized as judicial lawmaking: a rule excluding a certain type of evidence based on the Court's view of good policy, operating only prospectively (like most legislation and unlike normal judicial decisions, see *Atlanta Oculoplastic Surgery, P.C. v. Nestlehutt*, 286

---

was decided not on constitutional grounds but rather was "based on former OCGA § 24-3-36." E.g., *Wilson v. State*, 295 Ga. 84, 88 n.6 (757 SE2d 825) (2014). The first part of that statement is correct, but as discussed in the text, the second part is mistaken; *Mallory*'s reference to former § 24-3-36 indicates that the case was decided under the old Evidence Code, but no exclusionary language can be found in former § 24-3-36.

Ga. 731, 743 (691 SE2d 218) (2010) (Nahmias, J., concurring specially)). Although *Mallory* may be the most prominent example, its evidence-exclusion rule is not unique. See, e.g., *Brown v. State*, 250 Ga. 862, 867 (302 SE2d 347) (1983) ("We take this opportunity to announce a rule to assist counsel in the future in deciding what [autopsy] photos may be offered in evidence."). There are good reasons to doubt that this Court had the authority to promulgate such exclusionary evidence rules at all, at least after 1983. See Ga. Const. of 1983, Art. VI, Sec. I, Par. IX ("All rules of evidence shall be as prescribed by law.").[6] But in any event, having identified the provenance of *Mallory*'s rule, there is no doubt that it was abrogated by the new Evidence Code.

3.    As we have explained before, the new Evidence Code

---

[6] That said, we need not and do not decide in this case whether *Mallory*'s exclusionary rule should continue to be applied to cases governed by the old Evidence Code (of which there are unfortunately many left in the appellate pipeline, even though the new Evidence Code has been in effect for more than six years, see *Owens v. State*, 303 Ga. 254, 258-260 (811 SE2d 420) (2018)). Deciding whether *Mallory* should be *judicially overruled* would require consideration of not only the correctness of its rule, but also the other factors considered when applying the doctrine of stare decisis. See *Worthen v. State*, 304 Ga. 862, 869 (823 SE2d 291) (2019). All we decide today is whether *Mallory*'s rule was *statutorily abrogated* by the new Evidence Code.

created a "new evidence world" in this State. *Davis v. State*, 299 Ga. 180, 192 (787 SE2d 221) (2016). The new Code, which was modeled in large part on the Federal Rules of Evidence, is far more extensive and comprehensive than the statutes it replaced, and the General Assembly directed that "courts are to look to the 'substantive law of evidence in Georgia as it existed on December 31, 2012,' only when not displaced by the new code" that took effect on January 1, 2013. *State v. Almanza*, 304 Ga. 553, 556 (820 SE2d 1) (2018) (quoting the preamble to the new code found at Ga. L. 2011, p. 100, § 1). See also OCGA § 24-1-2 (e) ("*Except as modified by statute*, the common law as expounded by Georgia courts shall continue to be applied to the admission and exclusion of evidence and to procedures at trial." (emphasis added)). Where rules in the new Evidence Code are materially identical to Federal Rules of Evidence, we look to federal appellate law, and in particular the decisions of the United States Supreme Court and the Eleventh Circuit, to interpret them, instead of following our own precedent issued under the old Evidence Code. See *Almanza*, 304 Ga. at 556-557; *Chrysler Group, LLC v. Walden*,

303 Ga. 358, 361 (812 SE2d 244) (2018).

Under the new Evidence Code, the rules on "Relevant Evidence and Its Limits" are found in Chapter 4. OCGA § 24-4-401 ("Rule 401") first defines relevant evidence broadly as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." OCGA § 24-4-402 ("Rule 402") then says that relevant evidence is admissible unless a specific exception applies: "All relevant evidence shall be admissible, except as limited by constitutional requirements or as otherwise provided by law or by other rules, as prescribed pursuant to constitutional or statutory authority, applicable in the court in which the matter is pending. . . ."

Many "other rules" in the Evidence Code embody legislative policy decisions about the risks of prejudice associated with certain categories of evidence, including the 15 rules in Chapter 4 that authorize the exclusion of certain specific types of evidence. See OCGA §§ 24-4-404 to 24-4-418. Only one rule, however, authorizes

the exclusion of relevant evidence based on the *court's* evaluation of the "prejudice" such evidence could cause: OCGA § 24-4-403 ("Rule 403"), which grants the *trial court* discretion to exclude relevant evidence "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."[7]

Georgia's Rule 403 mirrors Federal Rule of Evidence 403, and we have accordingly interpreted our State's new rule in light of the federal appellate decisions interpreting the federal rule. See, e.g., *State v. Jones*, 297 Ga. 156, 158 (773 SE2d 170) (2015). Looking to Eleventh Circuit precedent, we have explained that Rule 403 requires the trial court to apply the rule's balancing test to the facts

---

[7] Only three other rules in the new Evidence Code expressly refer to the "prejudice" or "prejudicial" effect of evidence; they provide for *admission* of certain types of evidence when the converse of the Rule 403 test is met, that is, where the probative value of the evidence outweighs (or substantially outweighs) its prejudicial effect. See OCGA §§ 24-4-411 (evidence of liability insurance for some purposes), 24-6-609 (evidence of prior criminal conviction to impeach the accused and evidence of a more-than-ten-years-old prior conviction to impeach a witness), and 24-7-703 (otherwise inadmissible facts and data used by an expert to form an opinion).

and circumstances of the particular case at hand:

> [T]here is no mechanical solution for this balancing test. Instead, a trial court must undertake in each case a considered evaluation of the proffered justification for the admission of such evidence and make an independent determination of whether the probative value of the evidence "is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

*Jones*, 297 Ga. at 163 (quoting OCGA § 24-4-403).

We also have explained that the exclusion of evidence under Rule 403 is "an extraordinary remedy" that "should be used only sparingly" to exclude "matter of scant or cumulative probative force, dragged in by the heels for the sake of its prejudicial effect." *Kirby v. State*, 304 Ga. 472, 480 (819 SE2d 468) (2018) (citation and punctuation omitted). And we have recognized that "[t]he application of Rule 403 is a matter committed principally to the discretion of the trial courts," subject to appellate review only for abuse of that discretion. *Plez v. State*, 300 Ga. 505, 507-508 (796 SE2d 704) (2017). It is therefore clear that Rule 403 provides no authority for an appellate court to direct the exclusion of entire

categories of evidence. See *Olds v. State*, 299 Ga. 65, 76 (786 SE2d 633) (2016) (explaining that the application of Rule 403 "calls for a careful, case-by-case analysis, not a categorical approach"). See also *Williams v. State*, 328 Ga. App. 876, 879-880 (763 SE2d 261) (2014) (discussing differences between OCGA § 24-4-403 and prior Georgia precedent on excluding evidence based on its prejudice).

*Mallory*'s categorical exclusionary rule for evidence of a criminal defendant's "silence or failure to come forward" does not come within the exceptions enumerated in Rule 402. As discussed above, the *Mallory* rule did not purport to be constitutionally required, nor to be "otherwise provided" by any Georgia (or federal) law outside the Evidence Code. The *Mallory* rule is inconsistent with Rule 403, and it finds no home in any of the specific and detailed exclusionary rules included in the new Code.

These statutory exclusionary rules replace common-law exclusionary rules and, perforce, judge-made exclusionary rules that lack even the backing of common-law authority. See *Chrysler Group*, 303 Ga. at 365-366 ("[B]ecause there is no specific exclusionary rule

in the new Evidence Code carrying forward the common law's general exclusionary rule for that type of evidence, Georgia courts must consider party-wealth evidence under the parameters of the new Evidence Code."). Indeed, Georgia's Rule 402 was modeled on Federal Rule of Evidence 402, which was designed to "'wipe[ ] the slate clean'" of judicially created limitations on the admissibility of relevant evidence, replacing them with new, codified rules of exclusion. 22A Charles Alan Wright et al., Federal Practice & Procedure Evidence § 5192 (2d ed. Nov. 2018 update) (citation omitted). See also *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579, 587-588 (113 SCt 2786, 125 LE2d 469) (1993) (explaining that "[i]n principle, under the Federal Rules no common law of evidence remains," given Rule 402, although common-law precepts may be a source of guidance in interpreting the rules (citation and punctuation omitted)); *United States v. Carthen*, 906 F3d 1315, 1324 (11th Cir. 2018) (William Pryor, J., concurring) ("'(W)hen the Federal Rules are silent about a common-law restriction on the admission of logically relevant evidence, the Rules impliedly abolish

the restriction.'" (quoting Edward J. Imwinkelried, Formalism Versus Pragmatism in Evidence, 48 Creighton L. Rev. 213, 221 (2015)); *United States v. Lowery*, 166 F3d 1119, 1125 (11th Cir. 1999) (explaining that the exceptions in Federal Rule 402 are "an exclusive list of the sources of authority for exclusion of evidence in federal court").

For these reasons, we conclude that *Mallory*'s categorical, bright-line rule excluding all "comment upon a defendant's silence or failure to come forward [as] far more prejudicial than probative," 261 Ga. at 630, was abrogated by the new Evidence Code.[8] The trial court and the Court of Appeals therefore erred in relying on *Mallory* to set aside Orr's convictions.[9]

---

[8] With regard to the exclusionary rule for autopsy photos that this Court announced in *Brown*, 250 Ga. at 867, we note that although we have not formally said that it was abrogated by the new Evidence Code, in autopsy photo cases governed by the new Code, we have applied Rule 403 and the federal cases applying that rule to such evidence. See, e.g., *Moss v. State*, 298 Ga. 613, 617-618 (783 SE2d 652) (2016); *Dailey v. State*, 297 Ga. 442, 444 (774 SE2d 672) (2015).

[9] The trial court and the Court of Appeals applied *Mallory*'s rule in this case because, they said, they felt bound to follow this Court's precedent. Ordinarily, lower courts should determine in the first instance whether the new Evidence Code has abrogated a rule promulgated under the old Code,

4. The demise of *Mallory*'s blanket exclusionary rule will often make it much harder to determine whether evidence of a criminal defendant's pre-arrest "silence or failure to come forward" is admissible (and whether or how prosecutors may comment on such evidence).

(a) The analysis now requires careful consideration of what specific sorts of evidence that come within the broad phrase "silence or failure to come forward" may be properly offered under which particular evidence rules and theories. In the decades since *Mallory*,

---

using the same kind of analysis we have used in this opinion. Indeed, the Court of Appeals has applied many provisions of the new Evidence Code after properly determining that they displaced precedent decided under the old Code, without waiting for this Court to so hold. See, e.g., *Cruz v. State*, 347 Ga. App. 810, 815 n.6 (821 SE2d 44) (2018); *Walters v. State*, 335 Ga. App. 12, 14 (780 SE2d 720) (2015); *Williams*, 328 Ga. App. at 879-880. See also *Stratacos v. State*, 293 Ga. 401, 408 n.10 (748 SE2d 828) (2013) ("[I]t is always risky for courts to rely on a precedent interpreting a statute or other legal text without first examining whether the legal text on which the precedent was based has been revised and then considering the effect of any such change. . . . And we add that courts relying on old precedents regarding evidentiary issues should be particularly attuned to this risk in light of Georgia's new Evidence Code."). The key is to accurately apply the principles for determining which evidence statutes and decisions govern in the way this Court has explained in a number of cases and further elaborates in this opinion. See, e.g., *Almanza*, 304 Ga. at 556-559. That said, we cannot fault the lower courts for their cautious approach in this case, given that this Court expressly reserved the question of whether *Mallory* remained valid under the new Evidence Code in many cases over the past six years. See *Orr*, 345 Ga. App. at 77-78 (citing seven such cases).

lawyers and judges in our State's courts — including this Court — have rarely had to grapple with these questions, because whether or not such evidence might be properly admitted under any particular theory was irrelevant; *Mallory*'s rule meant that the evidence would all be excluded in any event. Moreover, the grappling now occurs under the new Evidence Code, making reliance on pre-*Mallory* Georgia precedent generally inappropriate.

As mentioned earlier, the *Mallory* Court alluded to the admissibility of a defendant's pre-arrest silence or failure to come forward as a so-called "adoptive admission" under former OCGA § 24-3-36, which said that "[a]cquiescence or silence, when the circumstances require an answer, a denial, or other conduct, may amount to an admission." See *Mallory*, 261 Ga. at 630. That provision was not retained in the new Evidence Code. Instead, the concept of adoptive admissions is found in OCGA § 24-8-801 ("Rule 801"), the definitions section of the chapter on hearsay evidence, which is materially identical to Federal Rule of Evidence 801, so we look for guidance to federal case law applying the federal rule rather

than our precedent applying the old statute. See *Almanza*, 304 Ga. at 556.

Our Rule 801 (a) (2) defines a "[s]tatement" to include the "[n]onverbal conduct of a person, if it is intended by the person as an assertion," and Rule 801 (d) (2) (B) then defines "admissions" not excluded by the hearsay rule when offered against a party to include "[a] statement of which the party has manifested an adoption or belief in its truth." For evidence to qualify as a criminal defendant's adoptive admission under Rule 801 (d) (2) (B), the trial court must find that two criteria were met: first, that "'the statement was such that, under the circumstances, an innocent defendant would normally be induced to respond,'" and second, that "'there are sufficient foundational facts from which the jury could infer that the defendant heard, understood, and acquiesced in the statement.'" *United States v. Jenkins*, 779 F2d 606, 612 (11th Cir. 1986) (citation omitted). See also *In the Interest of E. B.*, 343 Ga. App. 823, 828-829 (806 SE2d 272) (2017).

In this case, Orr's failure to contact the police after his wife

allegedly hit him in the head with an ashtray would not appear to meet this standard. The State has not identified a specific statement by someone else that Orr could be considered to have responded to or acquiesced in by not calling the police; without such a statement, there was nothing for Orr to "adopt." Compare *United States v. Carter*, 760 F2d 1568, 1579-1580 (11th Cir. 1985) (holding that the trial court properly admitted evidence of the defendants' adoptive admissions based on testimony that they remained silent in the back seat of a car while a co-conspirator told the driver about their smuggling activities). The State likewise presented no evidence that Orr remained silent in response to any specific statement by the police before or after he was arrested. The State did not call an arresting officer to testify, and Orr testified that, rather than remaining silent, he told the police about his head injury after he was arrested.

But the adoptive-admission theory is not the only way that evidence of a defendant's silence or failure to come forward might be admissible. Evidence of this sort also might qualify as an

"admission" excluded from the hearsay rule under subsection (A) of Rule 801 (d) (2) if it is "[t]he party's own statement" — but to be such a "statement," we recall, Rule 801 (a) (2) requires "[n]onverbal conduct" to be "intended to be an assertion." See Fed. R. Evid. 801 (a) advisory committee's note on 1972 Proposed Rules (explaining that "[t]he key to the definition [of 'statement'] is that nothing is an assertion unless intended to be one," and giving as an example of such assertive nonverbal conduct the act of an eyewitness pointing to identify a suspect in a lineup as the perpetrator of a crime). The party seeking to introduce evidence under Rule 801 (d) (2) (A) must identify the specific nonverbal conduct of the opposing party and the fact or facts that it was allegedly intended to assert. Vaguely pointing out that the defendant "failed to come forward" after a crime will not suffice.

Certain aspects of a defendant's failure to come forward to the police might also be offered not as a particular assertive statement subject to the hearsay rules, but rather as circumstantial evidence of guilt. As the Eleventh Circuit has recognized, "'[i]t is today

universally conceded that the fact of an accused's flight, escape from custody, resistance to arrest, concealment, assumption of a false name, and related conduct, [is] admissible as evidence of consciousness of guilt, and thus of guilt itself.'" *United States v. Borders*, 693 F2d 1318, 1324-1325 (11th Cir. 1982) (citation omitted). See also *Renner v. State*, 260 Ga. 515, 517 (397 SE2d 683) (1990) ("The fact that a suspect flees the scene of a crime points to the question of guilt in a circumstantial manner.").

There may be more theories under which evidence of a specific aspect of a defendant's "silence or failure to come forward" is admissible, including theories that apply only when the defendant testifies and becomes subject to the rules regarding impeachment. The point is that careful attention must now be paid to the specific evidence offered and the specific theory and rules the proponent of that evidence contends authorize its admission.

(b) If such evidence is deemed properly admissible, the inquiry turns to potential grounds for its exclusion — not automatically under *Mallory*'s defunct rule, but rather through the

lens of Rule 402. Perhaps a defendant opposing admission of evidence related to his silence or failure to come forward can, under certain circumstances, show that the specific evidence in question must be excluded under the federal or state Constitution, a statute, or one of the specific exclusionary rules in the new Evidence Code. But more commonly the defendant can ask the trial court to exercise its discretion to exclude the evidence under the balancing test set forth in Rule 403, as that exclusionary rule generally applies to all evidence, see *Chrysler Group*, 303 Ga. at 363.

It should be reiterated that the exercise of discretion under Rule 403 is case-specific and usually turns on the trial court's assessment of the probative value and prejudicial effect of the particular evidence at issue. In this respect, we note the United States Supreme Court's admonition that "[i]n most circumstances silence is so ambiguous that it is of little probative force," especially if the defendant does not later testify inconsistently. *United States v. Hale*, 422 U.S. 171, 176 (95 SCt 2133, 45 LE2d 99) (1975). See also *Johnson v. State*, 151 Ga. 21, 24 (105 SE 603) (1921) ("When under

arrest and confronted by another in the presence of an arresting officer, silence by the accused is as consistent with the theory that the accused prefers to exercise his right to await trial by the proper tribunal as it is of the consciousness of guilt.").

Courts have also cautioned against giving significant weight to certain evidence that a defendant did not come forward to the police after a crime, such as evidence of flight.

> [W]e have consistently doubted the probative value in criminal trials of evidence that the accused fled the scene of an actual or supposed crime. . . . "[I]t is a matter of common knowledge that men who are entirely innocent do sometimes fly from the scene of a crime through fear of being apprehended as the guilty parties, or from an unwillingness to appear as witnesses. Nor is it true as an accepted axiom of criminal law that 'the wicked flee when no man pursueth, but the righteous are as bold as a lion.'"

*Wong Sun v. United States*, 371 U.S. 471, 483 n.10 (83 SCt 407, 9 LE2d 441) (1963) (citations omitted). See also *Borders*, 693 F2d at 1325 (explaining that "the interpretation to be gleaned from an act of flight should be made cautiously and with a sensitivity to the facts of the particular case," including whether the defendant was aware that he was under investigation or had other reasons to flee and the

timing of the flight).

But we also recall that exclusion of evidence under Rule 403 is "an extraordinary remedy" that "should be used only sparingly" to prohibit "matter of scant or cumulative probative force, dragged in by the heels for the sake of its prejudicial effect." *Kirby*, 304 Ga. at 480 (citation and punctuation omitted). Again, the point is that this analysis cannot be done with broad strokes; it requires careful attention to the circumstances of and arguments made in the particular case at hand.

(c) Because the trial court and the Court of Appeals believed incorrectly that *Mallory*'s categorical exclusionary rule applied to this case, they did not conduct the analysis required by the new Evidence Code. Nor have the parties fully briefed those issues in this Court. The issues are further complicated at this point in the proceedings by questions about which arguments and concessions Orr and the State made at trial and on appeal, and whether arguments forfeited by Orr may be resurrected as claims of plain error, see OCGA § 24-1-103 (d), or ineffective assistance of counsel,

see *Strickland v. Washington*, 466 U.S. 668 (104 SCt 2052, 80 LE2d 674) (1984). These questions go far beyond the one question we granted certiorari to decide and have decided. We therefore vacate the judgment of the Court of Appeals and remand the case for proceedings consistent with this opinion, understanding that the Court of Appeals may decide that it needs to remand the case to the trial court to address some issues in the first instance.[10]

*Judgment vacated, and case remanded with direction. All the Justices concur, except Bethel, J., disqualified.*

Decided May 6, 2019.
Certiorari to the Court of Appeals of Georgia — 345 Ga. App. 74.

*Leigh E. Patterson, District Attorney, Luke A. Martin, Assistant District Attorney*, for appellant.

*McCurdy & Candler, Benjamin H. Pierman*, for appellee.

*D. Victor Reynolds, District Attorney, Michael S. Carlson, John S. Melvin, John R. Edwards, Amelia G. Pray, Assistant District Attorneys*, amici curiae.

---

[10] Because the trial court granted Orr a new trial based on *Mallory* and the Court of Appeals affirmed that order, neither court addressed the other grounds raised in Orr's original and amended motion for new trial. Orr's initial motion raised the general grounds, sufficiency of the evidence, and an unspecified trial court error; his amended motion also claimed that he received ineffective assistance of counsel based on his trial counsel's failure to inform him of the sentencing consequences of being charged as a recidivist. These issues would need to be decided before Orr's motion could be denied.