**SECOND DIVISION**
**RICKMAN, P. J.,**
**GOBEIL and DAVIS, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

**June 25, 2025**

# In the Court of Appeals of Georgia

A25A0555. WARD v. THE STATE.

Davis, Judge.

A Whitfield County jury found Robert Glenn Ward guilty of child molestation and sexual battery. Ward appeals from the denial of his motion for new trial, arguing that (1) the evidence was insufficient to sustain his convictions; (2) the trial court abused its discretion in excluding evidence of acquittals for other acts; and (3) the trial court erred by allowing the State to ask the victim to demonstrate with her body what she observed in a video. Finding no error, we affirm the trial court's order denying Ward's motion for new trial.

Viewed in the light most favorable to the verdicts,[1] the evidence presented at trial showed the following. K. S. testified that when she was in the fourth and fifth grade, she attended elementary school with Ward's daughter, T. W., and that she and T. W. were "best friends." During the weekend of September 22, 2017, K. S., who was 13 years old at the time, visited T. W. at Ward's home in Whitfield County. K. S. said that on Friday, September 22, she was play-wrestling with Ward, and he hit her with a belt and asked, "who's your daddy now?" which made her feel "really uncomfortable." The following morning, Ward claimed that K. S. pulled up her shirt and "play[ed] with herself" while she slept. The next day, Ward told K. S. that she should wear thongs because her "butt sagged."

K. S. also testified that during that weekend, Ward tickled her and "deep throat[ed] a popsicle in front of [her] and [T. W.]" As to the tickling incident, K. S. testified that it did not feel like Ward was actually tickling her "[b]ecause it was really close to [her] private parts." Specifically, she said that the touching occurred between her inner thighs and near her "cookie," which meant vagina, and that the touching made her feel "very uncomfortable." K. S. further testified that Ward showed her two

---

[1] *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

graphic videos on his phone. She said that in the first video, "Titty Tuesday," women took off their shirts and exposed their "really big" "[b]oobs," and the women would "jump a little" and their breasts would "bounce." Over Ward's objection, the trial court permitted K. S. to demonstrate to the jury the actions of the women in the video. In the second video, a woman was on her knees while a man stood in front of her and hit her in her face with his penis. K. S. called T. W.'s mother and her mother told her to call the police. A law enforcement officer who responded testified that K. S. was "emotional" as he approached her and that another officer on scene had to tell K. S. that "he's one of the good guys." During the investigation, K. S. made outcry statements about the incidents to the officers and later to a forensic interviewer.[2] Officers also obtained Ward's phone, and a crime intelligence analyst viewed the two videos on Ward's phone and provided similar descriptions of the content of the videos that were testified to by K. S.[3]

---

[2] The recording of the forensic interview was entered into evidence and published to the jury.

[3] According to the crime intelligence analyst, the videos could not be extracted from Ward's phone because "someone" deleted them.

The State also presented other acts evidence from four witnesses who were friends with T. W. K. M. testified that when she was 10 years old, she slept over at Ward's house and woke up and saw that her pants were down and that Ward was "rubbing" his penis on her buttocks. E. A. testified that when she was 10 years old, she was at Ward's house and that he rubbed her sides, which made her feel "uncomfortable," and "sucked" on her neck long enough to leave a mark. M. M. testified that when she was 8 or 9 years old, she was asleep on her stomach at Ward's house and woke up and found him on top of her, and that his "crotch was on [her] butt." In another incident, M. M. woke up and found Ward on top of her, and he "thrust[ed] against [her]" even though she "begged him to stop." K. S.'s 13-year-old sister, K. M. S., testified that while at a park with K. S. and T. W. in 2018, Ward "came up behind [her] and hugged [her]." She said that Ward's "private part" was "right up against [her]" and "hit" her in the area around her "butt," and she felt "scared and afraid."

Ward was charged by special presentment with two counts of child molestation (OCGA § 16-6-4), one count of sexual battery (OCGA § 16-6-22.1), and two counts

of exhibiting pornography to minors (OCGA § 16-12-103).[4] The State filed a motion to exclude evidence that Ward was acquitted of the other acts charges pertaining to E. A. and K. M., arguing that the acquittals (1) were not relevant; (2) were inadmissible hearsay; and (3) failed the balancing test of OCGA § 24-4-403, and the trial court granted the motion on all three grounds based on precedent from the Eleventh Circuit Court of Appeals. Following the jury trial, Ward was found guilty of child molestation and sexual battery, and the trial court imposed a 25-year sentence, with the first 15 years to be served in confinement and the remainder on probation. Ward filed a motion for new trial, which the trial court denied without an evidentiary hearing. This appeal followed.

1. First, in two enumerations of error, Ward argues that the evidence was insufficient to sustain his convictions because the State failed to present evidence that he intended to commit child molestation and because his physical contact with K. S. was consensual. We conclude that the evidence was sufficient to sustain Ward's convictions.

---

[4] The second child molestation charge and the exhibiting pornography to minors charges were later dropped.

5

On appeal from a criminal conviction, we view the evidence in the light most favorable to support the jury's verdict, and the defendant no longer enjoys a presumption of innocence; moreover, this Court determines evidence sufficiency and does not weigh the evidence or determine witness credibility. Resolving evidentiary conflicts and inconsistencies, and assessing witness credibility, are the province of the factfinder, not this Court. As long as there is some evidence, even though contradicted, to support each necessary element of the state's case, this Court will uphold the jury's verdict.

(Citation omitted.) *Johnson v. State*, 367 Ga. App. 344 (886 SE2d 5) (2023).

### *(a) Child Molestation*

"A person commits the offense of child molestation when such person . . . [d]oes an immoral or indecent act to or in the presence of or with any child under the age of 16 years with the intent to arouse or satisfy the sexual desires of either the child or the person[.]" OCGA § 16-6-4 (a) (1). In explaining an "immoral or indecent act" for purposes of child molestation, we have said that

> [i]mmoral or indecent acts constituting child molestation refer to acts which offend against the public's sense of propriety as well as to acts more suggestive of sexually oriented misconduct to a child's body than simply assaultive in nature. An act generally viewed as morally and

6

sexually indelicate, improper and offensive can constitute child molestation. Whether an act is immoral or indecent is a jury question.

(Citations omitted.) *Thomas v. State*, 324 Ga. App. 26, 27-28 (748 SE2d 509) (2013). Moreover, "the child molestation statute does not require proof of the defendant's actual arousal. Instead, the law requires only that the defendant have acted with the intent to arouse his sexual desires." (Citations and punctuation omitted.) *McMurria v. State*, 359 Ga. App. 558, 560 (1) (859 SE2d 530) (2021).

> The question of intent is peculiarly a question of fact for determination by the jury, which may infer a defendant's intent from the evidence presented at trial. The jury may find the requisite intent upon consideration of the words, conduct, demeanor, motive, and all other circumstances connected with the act. Further, the jury is authorized to discredit the defendant's statements about his motivations and find, instead, that the defendant possessed the requisite criminal intent. Where the jury finds the requisite intent, that finding will not be reversed on appeal provided there is some evidence supporting the jury's inference.

(Citations and punctuation omitted.) *Johnson*, supra, 367 Ga. App. at 347 (1) (a) (i).

Here, Count 1 of the special presentment alleged that Ward committed child molestation "by showing [K. S.] a video depicting nudity, with intent to arouse and

7

satisfy the sexual desires of said accused[.]" At trial, K. S. testified that Ward showed her two videos on his cellphone. The first video, titled "Titty Tuesday," showed "females raising their shirts and showing their breasts." She testified that the second video showed a female on her knees and that a man stood in front of her and hit her in the face with his penis. A crime intelligence analyst who viewed the videos on Ward's phone provided similar descriptions of the content of the videos. This evidence was sufficient to sustain Ward's conviction for child molestation. See *Gonzales v. State*, 359 Ga. App. 147, 148 (1) (a) (857 SE2d 88) (2021) ("[T]he testimony of a child molestation victim alone is sufficient to sustain a conviction.") (citation omitted); *Wright v. State*, 322 Ga. App. 622, 622-623 (1) & n.1 (745 SE2d 866) (2013) (evidence was sufficient to sustain defendant's conviction for child molestation for showing a pornographic video to a child).

Although Ward contends that he only showed K. S. the videos as a "joke" and had no intent to arouse or satisfy his sexual desires, we conclude that the jury was authorized to infer Ward's intent to commit child molestation from other evidence presented at trial. K. S. testified about other conduct by Ward which she said made her feel "uncomfortable." Specifically, she said that Ward told her that she should

8

wear thongs because her "butt sagged," and that while wrestling with Ward in his bedroom, he hit her with a belt and asked, "who's your daddy now?" The jury was also presented with other acts evidence that Ward got on top of M. M. while she slept and "thrust[ed]" his groin against her buttocks, "rubbed" his penis against K. M.'s buttocks, rubbed E. A.'s sides and "sucked" on her neck, and put his "private part" "right up against [K. M. S.]" while at a park. In light of this evidence, the jury was authorized to conclude that Ward had the requisite intent to commit child molestation. See *Gonzalez*, supra, 359 Ga. App. at 149 (1) (a) (jury was authorized to infer defendant's intent to commit child molestation where the State presented other acts evidence that the defendant masturbated while staring at a 15-year-old girl in Walmart); *Kruel v. State*, 344 Ga. App. 256, 258 (1) (a) (809 SE2d 491) (2018) (rejecting the defendant's argument that he did not intend to commit child molestation where the evidence showed that the defendant touched the child's vaginal area and made a "revealing" skirt for the child and followed her as she played outside in the revealing skirt).

### (b) Sexual Battery

Under OCGA § 16-6-22.1 (b), a person commits the offense of sexual battery when he or she intentionally makes physical contact with the

intimate parts of the body of another person without the consent of that person. OCGA § 16-6-22.1 (a) defines 'intimate parts' as the primary genital area, anus, groin, inner thighs, or buttocks of a male or female and the breasts of a female, and OCGA § 16-6-22.1 (d) makes sexual battery a felony offense if committed against a child under 16 years of age.

(Punctuation omitted.) *Chitwood v. State*, 352 Ga. App. 218, 225 (3) (a) n.5 (834 SE2d 334) (2019). As Ward points out, the Supreme Court of Georgia has explained that "despite its denomination as 'sexual' battery — [the offense] does not require any sexual contact at all. Rather, . . . it involves non-consensual, intentional physical contact with a victim's intimate body parts[,]" and that the State must present "actual proof of the victim's lack of consent, regardless of the victim's age." (Emphasis omitted.) *Watson v. State*, 297 Ga. 718, 720 (2) (777 SE2d 677) (2015). In a related context, we have been clear that a jury could infer lack of consent from other evidence presented at trial. See *Smith v. State*, 361 Ga. App. 436, 439 (1) (b) (864 SE2d 645) (2021) (stating that, in a prosecution for aggravated sexual battery, a jury could infer lack of consent from other evidence and that a victim is not "required to testify that she did not consent.").

Here, Count 3 of the special presentment alleged that Ward committed sexual battery "by placing his hand into contact with [K. S.'s] groin, inner thighs, and buttocks without [her] consent[.]" At trial, K. S. testified that Ward "tickl[ed] [her] in inappropriate parts." Specifically, she said that Ward "touched [her] in places below [her] breasts and in between [her] thighs," and that she did not believe that he was only tickling her because "it was really close to [her] private parts." She said that the touching occurred near her "cookie," which she said meant her vagina, and she told a law enforcement officer that she "felt very uncomfortable" during the incident. A responding officer also testified that K. S. was "emotional" as he approached her, that another officer on scene had to tell her that "he's one of the good guys." Although Ward contends that the evidence was insufficient because he did not "actually touch[] [K. S.'s] private parts," this argument is a non-starter. As stated above, the sexual battery statute criminalizes physical contact with the intimate parts of another person's body, which the statute defines as the primary genital *area*, anus, groin, *inner thighs*, breasts or buttocks of the victim. OCGA § 16-6-22.1 (a). And as recounted above, K. S. specifically testified that Ward touched the area between her thighs and that his hands were "really close to [her] private parts." Viewed in the light

most favorable to the verdict, we conclude that a rational trier of fact could have found Ward guilty of sexual battery beyond a reasonable doubt. See *Culverson v. State*, 371 Ga. App. 424, 427 (1) (b) (900 SE2d 632) (2024) (evidence that the defendant touched the child's breasts and that the child became "really upset" when disclosing the incident to her uncle "authorized the jury to conclude that the touching was accomplished without her consent.").

Consequently, for the foregoing reasons, Ward's insufficiency of the evidence claims fail.

2. Next, Ward argues that the trial court abused its discretion by granting the State's motion to exclude evidence that he was acquitted of the allegations involving E. A. and K. M. We conclude that the trial court did not abuse its discretion in this regard.

"[I]n reviewing an evidentiary ruling, this Court must determine whether that ruling constituted an abuse of the trial court's discretion." (Citation omitted.) *State v. Jackson*, 351 Ga. App. 675, 677 (832 SE2d 654) (2019).

As the Supreme Court of Georgia has explained, Georgia's current Evidence Code, which took effect on January 1, 2013, "created a 'new evidence world' in this

12

State." (Citation omitted.) *State v. Orr*, 305 Ga. 729, 736 (3) (827 SE2d 892) (2019). The Evidence Code "was modeled in large part on the Federal Rules of Evidence," and where rules in the Code "are materially identical to Federal Rules of Evidence, we look to federal appellate law, *and in particular the decisions of the United States Supreme Court and the Eleventh Circuit*, to interpret them[.]" (Emphasis supplied.) Id.

Turning to Ward's specific claim, the general admissibility of evidence is governed by OCGA §§ 24-4-401, 24-4-402, and 24-4-403, which are modeled after the Federal Rules of Evidence. *Venturino v. State*, 306 Ga. 391, 395-396 (2) (b) (830 SE2d 110) (2019). OCGA § 24-4-402 states in part that "[a]ll relevant evidence shall be admissible, except as limited by constitutional requirements or as otherwise provided by law or by other rules," and that "[e]vidence which is not relevant shall not be admissible." "[R]elevant evidence means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." OCGA § 24-4-401. And under OCGA § 24-4-403, "[r]elevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice,

confusion of the issues, or misleading the jury or by consideration of undue delay, waste of time, or needless presentation of cumulative evidence."

Although we have not squarely addressed the issue of the admissibility of a defendant's evidence of his acquittal of an other acts offense,[5] the Eleventh Circuit Court of Appeals has addressed the admissibility of judgments of acquittal in a related context. In *United States v. Howard*, No. 09-11386, 2010 U.S. App. LEXIS 7378 (11th Cir. April 8, 2010), the defendant argued that the trial court abused its discretion by excluding evidence of a prior acquittal from trial because the evidence was relevant to cast doubt on the credibility of the government's key witness and the legitimacy of the prosecution. Id. at *24 (I) (C). The court rejected the defendant's claim and first reasoned that the prior acquittal was not relevant. Id. at *25 (I) (C). Specifically, the court cited to precedent from the former Fifth Circuit which held that a prior acquittal is not relevant "because it does not prove innocence but rather merely indicates that the prior prosecution failed to meet its burden of proving beyond a reasonable doubt

---

[5] We have held, however, that an acquittal of other acts charges "does not preclude admission of evidence of said charges under our rules of evidence" because "a jury could find by a preponderance of the evidence that the defendant committed the act." (Citation omitted.) *Frady v. State*, 359 Ga. App. 255, 256 (2) (857 SE2d 260) (2021).

at least one element of the crime." (Citation omitted.) Id. The court further concluded that even if the prior acquittal was relevant, it was properly excluded under Rule 403 because its probative value was substantially outweighed by the danger of unfair prejudice, confusion of the issues, and misleading the jury. Id.; see also *United States v. Kendrick*, 682 F3d 974, 986 (V) (11th Cir. 2012) (holding that the district court did not abuse its discretion in excluding evidence of the defendant's prior acquittal because "[e]ven if the evidence of prior acquittal was otherwise admissible, it would be properly excludable under [Rule 403], because its probative value is outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury.") (citation omitted).

In light of the Eleventh Circuit's rulings on which the trial court relied, we conclude that the trial court did not abuse its discretion by excluding evidence of Ward's acquittals for the other acts charges involving E. A. and K. M. Applying the reasoning of the Eleventh Circuit, the judgments of acquittal were not relevant because they did not make the existence of a fact more or less probable, and even if they were relevant, the acquittals failed the balancing test of OCGA § 24-4-403 because their probative value was substantially outweighed by the danger of unfair

prejudice. Furthermore, the burden of proof for the admissibility of the evidence differed from the standard that the State was required to prove in the other acts cases. Ward nevertheless argues that the acquittals were admissible because (1) they were needed to "tell the jury the whole story of what happened" and to show that he did not have the requisite intent to commit the offenses; (2) other jurisdictions have determined that judgments of acquittal satisfy the public record exception of the hearsay rule; and (4) the probative value of the acquittals were "substantial." But as stated above, the Supreme Court of Georgia has determined that OCGA §§ 24-4-401, 24-4-402, and 24-4-403 are modeled after the Federal Rules of Evidence. *Venturino*, supra, 306 Ga. at 395-396 (2) (b). And again, where rules in the Code are materially identical to Federal Rules of Evidence, we look to decisions of the United States Supreme Court and the Eleventh Circuit to interpret them. *Orr*, supra, 305 Ga. at 736 (3). Because the Eleventh Circuit has determined that judgments of acquittal are not relevant and are properly excluded under the balancing test of Rule 403, the trial court did not abuse its discretion by relying on the Eleventh Circuit's decisions and granting the State's motion in limine excluding Ward's prior acquittals from trial.[6]

---

[6] We take this opportunity to emphasize that all that we decide today is that the trial court in this case did not abuse its discretion in excluding the acquittals. Nothing

16

3. Lastly, Ward argues that the trial court abused its discretion by allowing K. S. to demonstrate with her body what she observed in the video on his phone. We disagree.

As with Ward's claim in Division 2, we review this claim of error for abuse of discretion. *Jackson*, supra, 351 Ga. App. at 677. The Supreme Court of Georgia has explained that "[d]emonstrative evidence includes charts, models, diagrams, replicas, re-enactments, pictures, or any other device used to aid the trier of fact in understanding the issues and facts at trial." (Citation and punctuation omitted.) *Smith v. State*, 299 Ga. 424, 434 (3) (b) (788 SE2d 433) (2016). The Court further stated that

> [d]emonstrative evidence implicates several provisions of the [current] Evidence Code. It must be relevant, see OCGA § 24-4-401, and it may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence, see OCGA § 24-4-403.

Id. at 434-435 (3) (b).

---

in our holding should be construed as holding that this evidence is never admissible in Georgia.

> The burden is on the party offering a courtroom demonstration or experiment to lay a proper foundation establishing a similarity of circumstances and conditions. Although the conditions of the demonstration need not be identical to the event at issue, they must be so nearly the same in substantial particulars as to afford a fair comparison in respect to the particular issue to which the test is directed.

(Citation and punctuation omitted.) Id. at 435 (3) (b). Additionally, "[d]emonstrations are . . . subject to the reasonable control of the trial court." Id.

Here, as stated above, Ward was charged with child molestation for showing K. S. a video that depicted nudity. At trial, the State argued that the "Titty Tuesday" video was "gone" and that the probative value of the demonstration was "high" since there was no video to show the jury because "someone" deleted them from Ward's phone. Although Ward contends that K. S.'s testimony alone was sufficient, the demonstration was cumulative and unnecessary to complete the story, and he did not dispute the contents of the video, in light of the fact that the video was unavailable and because the abuse of discretion standard "recognizes the range of possible conclusions the trial judge may reach," (Citation omitted.) *Jackson*, supra, 351 Ga. App. at 677, we conclude that the trial court did not abuse its discretion in allowing K. S. to reenact for the jury what she observed in the video. See *Smith*, supra, 299 Ga. at 436 (3) (c)

18

(trial court did not abuse its discretion in allowing medical expert's demonstration with a baby doll because the baby doll was helpful in explaining his opinions). Consequently, this claim of error fails.

Accordingly, for the foregoing reasons, we affirm the trial court's order denying Ward's motion for new trial.

*Judgment affirmed. Rickman, P. J., concurs. Gobeil, J., concurs fully as to Divisions 1 and 2 and concurs in judgment only as to Division 3.*